PHILLIPS PETROLEUM CO. AND AFFILIATED SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 34019-87.      Filed July 3, 1991.

*Stephen D. Gardner, John Hartje, Ann-Elizabeth Purintun,* and *Carolyn J. Schwarz,* for the petitioner.

*Val J. Albright, Stephen C. Coen,* and *Martin Van Brauman,* for the respondent.

KÖRNER, *Judge:* This case is presently before the Court on the parties' cross-motions for partial summary judgment, submitted pursuant to Rule 121.[1] At issue is the proper source and character of Phillips Petroleum Co.'s (hereinafter Phillips) income from certain sales of liquefied natural gas (LNG). Resolution of this issue initially requires that we determine whether section 1.863-1(b), Income Tax Regs., is a valid regulation. If we hold that the regulation is invalid, we must also decide whether respondent may require petitioner to apportion the LNG income according to the method set out in *example (1)* of section 1.863-3(b)(2), Income Tax Regs., and whether Phillips' foreign source LNG income was "foreign oil related income," within the meaning of section 907(c)(2).

The deficiencies determined in this case are for calendar years 1975, 1976, 1977, and 1978. The present motions involve positions taken on petitioner's 1976, 1977, and 1978 returns.

## FINDINGS OF FACT

The parties filed a stipulation of facts solely for purposes of their cross-motions for partial summary judgment. The

---

[1] All statutory references are to the Internal Revenue Code as in effect for the years in issue, except as otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to Rules 61(b) and 141(b), this case has been severed into component parts. We have previously issued two opinions in this case, *Phillips Petroleum Co. v. Commissioner,* 92 T.C. 885 (1989), and *Phillips Petroleum Co. v. Commissioner,* T.C. Memo. 1991-257. Other issues remain to be heard. Accordingly, our present order herein restores this case to the general docket for trial on the remaining issues.

stipulation of facts is incorporated herein by this reference. The facts underlying the parties' motions are not in dispute.

Petitioner is an affiliated group of corporations that filed consolidated Federal income tax returns for the years at issue. Phillips was the common parent and a member of petitioner. Phillips' principal office was in Bartlesville, Oklahoma, when petitioner filed the petition herein.

During 1976, 1977, and 1978, Phillips sold quantities of LNG to Tokyo Gas Co. Ltd. (Tokyo Gas) and the Tokyo Electric Power Co., Inc. (Tokyo Electric). The sales took place under a 1967, 15-year contract (subject to extension, and as amended and in effect at the times of sale) between Phillips and Tokyo Gas and Tokyo Electric. Pursuant to the contract, Phillips owned the LNG until it was delivered to Japan, where the sales occurred.

Phillips' LNG operations were located in the State of Alaska. In 1962 Phillips acquired mineral interests in certain oil and gas leases in the North Cook Inlet field in the Upper Cook Inlet area of Alaska. Phillips extracted natural gas from this field, which was transported by pipeline to an onshore liquefaction facility near Kenai, Alaska. It was there processed into LNG, and shipped via tankers to Japan. As stated, the actual sales occurred upon delivery of the LNG to Tokyo Gas and Tokyo Electric.

On its 1976, 1977, and 1978 consolidated Federal income tax returns, petitioner took the following positions when reporting the net income from sales of LNG to Tokyo Gas and Tokyo Electric: (1) It treated the income as derived partly from sources within the United States and partly from sources without the United States (mixed source); (2) it apportioned the income between such sources according to the method set out in *example (2)* of section 1.863-3(b)(2), Income Tax Regs.; and (3) it reported the income it treated as derived from a foreign source as foreign oil related income, under section 907(c)(2).

In his notice of deficiency respondent determined that none of the income at issue was foreign source, and that none of the income was foreign oil related income.

For purposes of their cross-motions, the parties have also stipulated that "No portion of the net income generated by the LNG sales was attributable to anything other than the

extraction of the natural gas, the transportation of the natural gas, the liquefaction of the natural gas, the transportation of the LNG and the sale of the LNG," and that "a portion of the net income generated by the LNG sales was attributable to the extraction of the natural gas."

OPINION

Issue (1): *The Validity of Section 1.863-1(b), Income Tax Regs.*

The first issue for decision is the proper source of Phillips' income from the sales of LNG to Tokyo Gas and Tokyo Electric. Respondent determined that the income was entirely U.S. source; petitioner claims it to be mixed source.

Respondent relies upon section 1.863-1(b), Income Tax Regs. That regulation provides, inter alia, that income derived from the ownership or operation of any oil or gas well located within the United States, and from the sale by the producer of the products thereof without the United States, shall ordinarily be considered U.S. source income. Exceptions to this general rule may be imposed or granted by respondent or his officials.[2]

Petitioner does not disagree with the assertion that the LNG income falls within the general rule of section 1.863-1(b)(1), Income Tax Regs. Petitioner instead challenges the validity of that regulation. It is petitioner's position that section 1.863-1(b) of the regulations contradicts the clear and unambiguous language of section 863(b)(2)[3] of the Code

---

[2] Sec. 1.863-1(b), Income Tax Regs., states as follows:

(b) *Natural resources.* (1) The income derived from the ownership or operation of any farm, mine, oil or gas well, other natural deposit, or timber, located within the United States, and from the sale by the producer of the products thereof within or without the United States, shall ordinarily be included in gross income from sources within the United States. If, however, it is shown to the satisfaction of the district director (or, if applicable, the Director of International Operations) that, due to the peculiar conditions of production and sale in a specific case or for other reasons, not all of the gross income derived therefrom should be allocated to sources within the United States, an apportionment thereof to sources within the United States and to sources without the United States shall be made as provided by section 863(b) and §1.863-2.

(2) If the Commissioner determines that the application of the provisions of subparagraph (1) of this paragraph does not result in a proper allocation or apportionment of income, the Commissioner may make such other allocation or apportionment as will, in his opinion, more clearly reflect the proper source of the income to which such subparagraph applies. This subparagraph shall apply with respect to taxable years beginning after December 31, 1957.

[3] As in effect for the years at issue, and in pertinent part, sec. 863(b) provided that:

Gains, profits, and income—

\*     \*     \*     \*     \*     \*     \*

and, accordingly, is invalid. For the reasons stated below, we agree with petitioner.

We initially note that section 1.863-1(b) is a "legislative regulation," issued pursuant to a specific delegation of legislative authority.[4] In general, we must defer to Treasury Regulations as long as they "implement the congressional mandate [to prescribe all needful rules for the enforcement of the Internal Revenue Code] in some reasonable manner." *United States v. Correll,* 389 U.S. 299, 307 (1967). Legislative regulations are entitled to an especially high degree of deference. See, e.g., *Rowan Cos. v. United States,* 452 U.S. 247, 253 (1981), and cases cited therein. Nonetheless, a regulation which exceeds its congressionally mandated scope of authority and is "plainly inconsistent with the revenue statutes," cannot be sustained. See *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156, 169 (1981), (quoting *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948)).

As stated, section 1.863-1(b), Income Tax Regs., was promulgated pursuant to the congressional grant of authority contained in present-day section 863(a). That delegation, to prescribe rules and regulations to allocate or apportion items of gross income, expenses, losses, and deductions, other than those specified in sections 861(a) and 862(a), is quite broad. It can also be seen as inconsistent with the provisions of section 863(b) which state certain types of gains, profits, and income—items not specified in sections 861(a) and 862(a)—that shall be treated as partly from sources within and partly from sources without the United

---

(2) from the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States * * *

$$* \qquad * \qquad * \qquad * \qquad * \qquad * \qquad *$$

shall be treated as derived partly from sources within and partly from sources without the United States.

(Effective for taxable years beginning after Dec. 31, 1976, paragraph (2) was amended by substituting "sale or exchange" for "sale" and "sold or exchanged" for "sold." Tax Reform Act of 1976, Pub. L. 94-455, sec. 1901(b)(26), 90 Stat. 1520, 1798.) Sec. 863(b) is reproduced in full at appendix I.

[4]That delegation is stated in present-day sec. 863(a). In pertinent part, sec. 863(a) provides that: "Items of gross income, expenses, losses, and deductions, other than those specified in sections 861(a) and 862(a), shall be allocated or apportioned to sources within or without the United States, under regulations prescribed by the Secretary or his delegate." (Effective Feb. 1, 1977, "Secretary" was substituted for "Secretary or his delegate." Tax Reform Act of 1976, Pub. L. 94-455, sec. 1906(b)(13)(A), 90 Stat. 1520, 1834.) It is uncontested that the allocation of the income at issue is not governed by secs. 861(a) or 862(a).

States. We resolve this apparent inconsistency by construing the section 863(b) sourcing rules as not contradicting, but modifying and necessarily constraining the section 863(a) delegation of authority. We base this conclusion on the statutory precept that general provisions of law must yield to specific ones, *Busic v. United States,* 446 U.S. 398, 406 (1980), and apply this rule having considered the original form in which sections 863(a) and (b) were enacted— as part of a single paragraph.[5]

Having determined that the general delegation of section 863(a) must yield to the specific provisions of section 863(b), and, of course, bearing in mind the fact that a congressional statute must always take precedence over an administrative regulation, all that remains for determination is the question of whether an actual conflict exists, i.e., do, as petitioner contends, sections 863(b)(2) of the Internal Revenue Code and 1.863-1(b) of the Income Tax Regulations conflict? We hold that they do. While we endeavor, if at all possible, to construe such provisions harmoniously, we are compelled to conclude that the two provisions at issue cannot be reconciled.

Section 1.863-1(b)(1), Income Tax Regs., states a general rule that worldwide income from U.S. natural resources shall be treated as U.S. source income. Exceptions to this general rule are left to the discretion of respondent or his officials. Phillips' income from the LNG, produced in Alaska and sold in Japan, falls within the regulation's general rule. No exception was granted.

Section 863(b)(2) states that income from the sale of personal property produced within and sold without the United States shall be treated as mixed source. Natural resource income may also come under this rule. For example, natural gas, once extracted, is considered "personal property," see 58 C.J.S. *Mines and Minerals,* sec. 134(b) (1948); cf. sec. 1.897-1(b)(2), Income Tax Regs., and

---

[5]The original paragraph in which the predecessor of sec. 863(a) and (b) was contained is reproduced at appendix II. The 1954 Act divided that paragraph (which had been at sec. 119(e) of the 1939 Code) and created, inter alia, secs. 863(a) and (b). We have found no indication in the legislative history of the 1954 Act that attaches any substantive import to this division. On the contrary, the Senate Finance and House Ways and Means Committee reports both state that the 1954 Act made "no substantive change" to the sourcing rules. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 416 (1954); H. Rept. 1337, 83d Cong., 2d Sess. A244 (1954).

the term "produced" is broadly defined to include "manu-factured," "extracted," and "processed." Sec. 864(a). Phillips' LNG income clearly falls within this rule as well.

The conflict between sections 1.863-1(b) of the regulations and 863(b)(2) of the Code is thus evident, as illustrated by the present case. As stated, we must resolve any such conflict in favor of section 863(b)(2). We accordingly hold that section 1.863-1(b), Income Tax Regs., to the extent it conflicts with section 863(b)(2), is invalid.

One final point merits discussion. Treasury Regulation section 1.863-1(b)(1) states that respondent may, under appropriate circumstances, effectively waive the application of section 1.863-1(b)'s general rule. It can thus be argued that a genuine issue of material fact exists as to whether respondent abused his discretion by not finding that there were "peculiar conditions of production or sale" or "other reasons" to permit mixed sourcing of the subject income. We would disagree. No peculiar or unique conditions are apparent in this case or have been suggested by respondent. On the contrary, we consider it a prototype example of section 1.863-1(b)'s general rule application. Accordingly, we consider the regulation's validity properly at issue, have found it to be invalid, and therefore consider this assertion to raise a moot point. Our decision is not based on the fact that respondent did not exercise his discretion, but is rather based on a determination that respondent never had such discretion, because it contravened a clear statutory provision.

Issue (2): *May Respondent Require Petitioner to Apportion the LNG Income According to the Method Stated in Example (1), Section 1.863-3(b)(2), Income Tax Regs.?*

Having decided that Phillips' LNG income is properly allocated, under section 863(b), to sources partly within and partly without the United States, the next issue for decision is the proper apportionment of that income. It is uncontested that section 1.863-3(b)(2), Income Tax Regs., governs the apportionment. However, that regulation states three different methods of apportionment.[6] Petitioner

---

[6]Sec. 1.863-3(b)(2), Income Tax Regs., as in effect for the years at issue, is reproduced at appendix III.

asserts that it was entitled to employ the method of *example (2)*; respondent argues that he may require petitioner to use *example (1)*.[7] This element of the parties' motions for partial summary judgment is being considered based on an agreed factual assumption: that there existed certain circumstances surrounding the LNG sales, including an independent factory or production price. Petitioner's motion argues that it cannot be made to use *example (1)* even if those conditions existed; respondent's position is that *example (1)* must be used when those conditions exist. If we deny petitioner's motion, then the actual facts surrounding the LNG sales will have to be determined before this issue can be fully resolved.

Both petitioner and respondent base their primary argument on a grammatical construction of section 1.863-3(b)(2), Income Tax Regs. Both argue that the wording and structure of the regulation clearly require a decision in their favor. We agree that the regulation's language is determinative, and hold for respondent on this issue.

We simply find no textual support for petitioner's contention that the apportionment method set out in *example (1)* is elective with taxpayers. Instead, a close reading of section 1.863-3(b)(2), Income Tax Regs., sustains respondent's contention that, under the requisite factual setting, *example (1)* must be used. We consider the following points instructive:

Example (1) begins by stating a factual threshold to its application: "Where the manufacturer or producer regularly sells part of his output to wholly independent distributors or other selling concerns in such a way as to establish fairly an independent factory or production price [IFP] * * * ." It uses the word "establish" as part of the adverbial phrase modifying the word "sells." Placed in context, this phrase clearly indicates that, when the circumstances of sale establish certain conditions, then *example (1)*'s method applies. Not employed was a phrase such as "Where the manufacturer or producer establishes that * * *," language which would indicate that the method was elective with taxpayers.

Example (1) contains a phrase, set off by dashes, which allows the manufacturer or producer to "show to the satisfaction of the district director * * * that such an independent factory or production price has been otherwise established." Thus, the example contains 2 cases where

---

[7]The "examples" of sec. 1.863-3(b)(2), Income Tax Regs., state methods of apportionment. They are not literally examples, i.e., they do not contain illustrations of elsewhere-stated rules.

there may be an IFP: where there are regular sales which establish an IFP, and where the taxpayer shows that an IFP has been otherwise established. That the latter case contains an explicitly stated option (to show or not to show), which is clearly elective with taxpayers, strongly suggests, by juxtaposition, that the former case is not elective.

The language of *example (2)* also strongly suggests that *example (1)* is the rule of general application, under the appropriate factual setting. *Example (2)* defines its application in the negative, i.e., that it applies when *example (1)* does not: "Where an independent factory or production price has not been established as provided under *example (1)*, the taxable income shall * * * ." *Example (1)*, in contrast, is stated in the positive. It is also stated first.

Finally, we reject the suggestion that the final sentence of *example (1)*, which requires that a statement be attached to the taxpayer's return whenever *example (1)* is used, implies that *example (1)* is elective. We simply find no logical connection between the imposition of a disclosure requirement and the question of whether the substantive rule is elective or not.

In accordance with these conclusions, we must deny petitioner's motion for partial summary judgment on this point. We hold that, as a matter of law, when all the factual prerequisites to the application of *example (1)* are present, that example's method of apportionment must be used. As stated, the relevant facts of this case are undetermined. Unless the parties can reach an agreement, these issues will have to be tried and decided.

Issue (3): *Was Phillips' Foreign Source LNG Income "Foreign Oil Related Income?"*

Subpart A (sections 901-908) of part III of subchapter N of the Code deals with the foreign tax credit. Section 907 provides special rules in the case of foreign oil and gas income. The final issue for decision is whether Phillips' foreign source LNG income was "foreign oil related income," (FORI) within the meaning of section 907(c)(2). Petitioner argues that it was; respondent asserts that it was not. We reach this issue because, even though the apportionment of the LNG income is unresolved (issue (2)), it has been resolved that the subject income was derived partly from sources within and partly from sources without the United States (issue (1)). Accordingly, a portion of Phillips' LNG income was foreign source. We now address the character of that income.

Petitioner argues that Phillips' foreign source LNG income falls squarely within the definition of FORI. As in effect for the years at issue, section 907(c)(2) defined FORI as follows:

(2) FOREIGN OIL RELATED INCOME.—The term "foreign oil related income" means the taxable income derived from sources outside the United States and its possessions from—
    (A) the extraction (by the taxpayer or any other person) of minerals from oil or gas wells,
    (B) the processing of such minerals into their primary products,
    (C) the transportation of such minerals or primary products,
    (D) the distribution or sale of such minerals or primary products, or
    (E) the sale or exchange of assets used by the taxpayer in the trade or business described in subparagraph (A), (B), (C), or (D).

LNG is a primary product of gas. Section 1.907(c)-1A(c)(6), Income Tax Regs., containing definitions relating to FORI, etc., for taxable years beginning before January 1, 1983. The parties have stipulated that Phillips' LNG income was attributable to nothing other than extracting natural gas, transporting natural gas, processing the natural gas into LNG, transporting the LNG, and selling the LNG. It follows that Phillips' foreign source LNG income was FORI under the definition of section 907(c)(2).

Respondent disagrees. He argues that none of the subject income can be FORI because section 907 is inapplicable to income generated by the sale of oil or gas produced from wells located in the United States. There is no basis for this assertion in the statute's text. It is clear that the phrase "derived from sources outside the United States" refers to the source of the taxable income, not the location of the oil or gas wells.[8] Such source is determined under sections 861-864.[9] See sec. 1.861-1(a), Income Tax Regs. Respondent cites congressional intent and certain legislative histories to support his position. In light of the clear and unambiguous statutory language, we are not persuaded by respondent's

---

[8]While we note that sec. 1.907(c)-1(b)(1), Income Tax Regs., effective for taxable years beginning after Dec. 31, 1982, defines "foreign oil and gas extraction income," a concept related to FORI, as "from oil or gas wells located outside the United States and its possessions," we find this fact unpersuasive on the present matter. As noted, sec. 1.907(c)-1(b)(1) does not apply to the years before us. An inapplicable, interpretative Treasury Regulation, with a dubious statutory basis, cannot be allowed to override clear statutory language.

[9](1) Part 1, subchapter N, chapter 1 of the Code determines the source of income for purposes of the income tax. During the years at issue that part contained secs. 861-864.

argument. See *Cal-Maine Foods, Inc. v. Commissioner*, 93 T.C. 181, 208-209 (1989). We accordingly hold for petitioner on this issue.

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, SHIELDS, HAMBLEN, COHEN, CLAPP, JACOBS, GERBER, WRIGHT, WHALEN, COLVIN, HALPERN, and BEGHE, *JJ.*, agree with the majority opinion.

CHABOT and RUWE, *JJ.*, did not participate in the consideration of this opinion.

---

APPENDIX I

Section 863(b), as in effect for the years at issue, provides:

SEC. 863(b). INCOME PARTLY FROM WITHIN AND PARTLY FROM WITHOUT THE UNITED STATES.—In the case of gross income derived from sources partly within and partly without the United States, the taxable income may first be computed by deducting the expenses, losses, or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income; and the portion of such taxable income attributable to sources within the United States may be determined by processes or formulas of general apportionment prescribed by the Secretary or his delegate. Gains, profits, and income—

(1) from transportation or other services rendered partly within and partly without the United States,

(2) from the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States, or produced (in whole or in part) by the taxpayer without and sold within the United States, or

(3) derived from the purchase of personal property within a possession of the United States and its sale within the United States,

shall be treated as derived partly from sources within and partly from sources without the United States.

Effective for taxable years beginning after December 31, 1976, paragraphs (2) and (3) were amended by substituting "sale or exchange" for "sale" and "sold or exchanged" for "sold." "Secretary" was substituted for "Secretary or his

delegate." Tax Reform Act of 1976, Pub. L. 94-455, secs. 1901(b)(26), 1906(b)(13)(A), 90 Stat. 1520, 1798-1799, 1834.

## APPENDIX II

Enacted at section 217(e) of the Revenue Act of 1921, 42 Stat. 227, 244-245, the paragraph which contained the predecessor of sections 863(a) and (b) stated as follows:

(e) *Items of gross income, expenses, losses and deductions, other than those specified in subdivisions (a) and (c) [corresponding to sections 861 and 862 of the Code], shall be allocated or apportioned to sources within or without the United States under rules and regulations prescribed by the Commissioner with the approval of the Secretary.* Where items of gross income are separately allocated to sources within the United States, there shall be deducted (for the purpose of computing the net income therefrom) the expenses, losses and other deductions properly apportioned or allocated thereto and a ratable part of other expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the United States. In the case of gross income derived from sources partly within and partly without the United States, the net income may first be computed by deducting the expenses, losses or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income; and the portion of such net income attributable to sources within the United States may be determined by processes or formulas of general apportionment prescribed by the Commissioner with the approval of the Secretary. *Gains, profits and income* from (1) transportation or other services rendered partly within and partly without the United States, or (2) *from the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States,* or produced (in whole or in part) by the taxpayer without and sold within the United States, *shall be treated as derived partly from sources within and partly from sources without the United States.* Gains, profits and income derived from the purchase of personal property within and its sale without the United States or from the purchase of personal property without and its sale within the United States, shall be treated as derived entirely from the country in which sold. [Emphasis added.]

## APPENDIX III

As in effect for the years at issue, section 1.863-3(b)(2), Income Tax Regs., provided as follows:

(2) *Allocation or apportionment.* The taxable income from sources within the United States, in the case of the items to which this paragraph applies, shall be determined according to the examples set forth in this subparagraph. For such purposes, the deductions for the personal exemptions shall not be taken into account, but the special deductions described in paragraph (c) of § 1.861-8 shall be taken into account.

*Example (1).* Where the manufacturer or producer regularly sells part of his output to wholly independent distributors or other selling concerns in such a way as to establish fairly an independent factory or production price—or shows to the satisfaction of the district director (or, if applicable, the Director of International Operations) that such an independent factory or production price has been otherwise established—unaffected by considerations of tax liability and the selling or distributing branch or department of the business is located in a different country from that in which the factory is located or the production carried on, the taxable income attributable to sources within the United States shall be computed by an accounting which treats the products as sold by the factory or productive department of the business to the distributing or selling department at the independent factory price so established. In all such cases the basis of the accounting shall be fully explained in a statement attached to the return for the taxable year.

*Example (2).* (i) Where an independent factory or production price has not been established as provided under example (1), the taxable income shall first be computed by deducting from the gross income derived from the sale of personal property produced (in whole or in part) by the taxpayer within the United States and sold within a foreign country or produced (in whole or in part) by the taxpayer within a foreign country and sold within the United States, the expenses, losses, or other deductions properly allocated and apportioned thereto in accordance with the rules set forth in § 1.861-8.

(ii) Of the amount of taxable income so determined, one-half shall be apportioned in accordance with the value of the taxpayer's property within the United States and within the foreign country, the portion attributable to sources within the United States being determined by multiplying such one-half by a fraction the numerator of which consists of the value of the taxpayer's property within the United States, and the denominator of which consists of the value of the taxpayer's property both within the United States and within the foreign country. The remaining one-half of such taxable income shall be apportioned in accordance with the gross sales of the taxpayer within the United States and within the foreign country, the portion attributable to sources within the United States being determined by multiplying such one-half by a fraction the numerator of which consists of the taxpayer's gross sales for the taxable year or period within the United States, and the denominator of which consists of the taxpayer's gross sales for the taxable year or period both within the United States and within the foreign country.

(iii) The term "gross sales," as used in this example, refers only to the sales of personal property produced (in whole or in part) by the taxpayer

within the United States and sold within a foreign country or produced (in whole or in part) by the taxpayer within a foreign country and sold within the United States.

(iv) The term "property," as used in this example, includes only the property held or used to produce income which is derived from such sales. Such property should be taken at its actual value, which in the case of property valued or appraised for purposes of inventory, depreciation, depletion, or other purposes of taxation shall be the highest amount at which so valued or appraised, and which in other cases shall be deemed to be its book value in the absence of affirmative evidence showing such value to be greater or less than the actual value. The average value during the taxable year or period shall be employed. The average value of property as above prescribed at the beginning and end of the taxable year or period ordinarily may be used, unless by reason of material changes during the taxable year or period such average does not fairly represent the average for such year or period, in which event the average shall be determined upon a monthly or daily basis.

(v) Bills and accounts receivable shall (unless satisfactory reason for a different treatment is shown) be assigned or allocated to the United States when the debtor resides in the United States, unless the taxpayer has no office, branch, or agent in the United States.

*Example (3).* Application for permission to base the return upon the taxpayer's books of account will be considered by the district director (or, if applicable, the Director of International Operations) in the case of any taxpayer who, in good faith and unaffected by considerations of tax liability, regularly employs in his books of account a detailed allocation of receipts and expenditures which reflects more clearly than the processes or formulas herein prescribed the taxable income derived from sources within the United States.

---

PARKER, *J.* dissenting: This case impacts the income-sourcing rules for all natural resources located within the United States. The majority invalidates section 1.863-1(b), Income Tax Regs., because of a perceived conflict between the regulation and section 863(b), concluding that section 1.863-1(b) is not a proper exercise of the Secretary's rule-making authority. In my opinion, the majority ignores a clear contemporaneous expression of Congressional intent supporting the regulation, the contemporaneity of the enactment of the statutory language (1921) and the promulgation of the regulatory language (1922), the longevity of the regulatory language (69 years) and the Congress' long-continued silence in regard thereto, and the consistency of the administrative pronouncements interpreting the regu-

lation. I cannot ignore these factors, and I must respectfully dissent.

The majority views Phillips' liquified natural gas as "personal property" once removed from the ground. The majority observes that section 863(b) specifically treats income from the sale of personal property produced in the United States and sold outside the United States as partly U.S. source and partly foreign source income. The majority concludes that section 863(b) modifies the general delegation of rule-making authority contained in section 863(a). Having reached this construction of the statute, the majority finds that the language of section 1.863-1(b), Income Tax Regs., conflicts with the language of section 863(b)(2) and holds that the regulation is invalid. However, for the last 69 years, income from the natural resources "located in the United States" has been treated as income "from sources within the United States." The Congress has never indicated that its original legislative intent was to the contrary, and until today no other court has questioned the sourcing rules for natural resources.

As applied to natural resources, the statute is silent and possibly ambiguous: section 863(a) gives the Secretary wide latitude to promulgate sourcing rules. Section 863(b)(2) appears to restrict the Secretary's discretion, directing him to treat income from the foreign sale of domestically produced personal property as dual-source income. Does the power the Congress granted the Secretary under section 863(a) authorize him to promulgate sourcing rules for natural resources irrespective of the restrictions contained in section 863(b)? I think the answer is "yes," as shown by the history of the sourcing rules.

The concept of "source" entered the tax laws with sections 1(a) and 10 of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 765-766. Section 1(a) provided:

That there shall be levied, assessed, collected, and paid annually upon the entire net income received in the preceding calendar year from all sources by every individual, a citizen or resident of the United States, a tax of two per centum upon such income; *and a like tax shall be levied, assessed, collected, and paid annually upon the entire net income received in the preceding calendar year from all sources within the United States by every individual, a nonresident alien, including interest on bonds,*

*notes, or other interest-bearing obligations of residents, corporate or otherwise.* [Emphasis supplied.]

Section 10 provided a similar rule for foreign corporations.

In the Revenue Act of 1918, 40 Stat. 1057, 1066, and 1077, the Congress incorporated taxation of the U.S. source income of nonresident aliens and foreign corporations in sections 213(c) and 233(b) of the act, respectively. Section 213(c) provided:

> In the case of nonresident alien individuals, gross income includes only the gross income from sources within the United States, including interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, dividends from resident corporations, *and including all amounts received (although paid under a contract for the sale of goods or otherwise) representing profits on the manufacture and disposition of goods within the United States.* [40 Stat. 1066. Emphasis supplied.]

Again, section 233(b) provided a similar rule for foreign corporations.

The origin of what is now section 863 is section 217(e) of the Revenue Act of 1921, 42 Stat. 227, 244-245.[1] The act's final form follows the Senate's version of the bill, H.R. 8245 (67th Cong., 1st Sess. (November 4, 1921)).[2] The version of H.R. 8245 passed by the House (67th Cong., 1st Sess. (Aug. 20, 1921)) (reproduced in the appendix attached to this dissenting opinion), contained express sourcing rules for the production and sale of natural resources. Under the House's version "Gains, profits, and income from the ownership or operation of any farm, mine, oil or gas well, other natural deposit, or timber, located in the United States, and from any sale by the producer of the products thereof" was U.S. source income for nonresident alien individuals and foreign traders. Appendix, sec. 217(a)(5). The converse was true for

---

[1] Sec. 217(e) of the Revenue Act of 1921 is reproduced in full in appendix II of the majority opinion.

[2] A brief history of the Revenue Act of 1921 appears in the Statement of the Managers on the Part of the House, in Conf. Rept. 486, 67th Cong., 1st Sess. (Nov. 19, 1921), at 14:

Amendment No. 3: The House bill consisted of specified amendments to the revenue act of 1918 and continued that act in force without repeal. The Senate amendments propose an entirely different method—namely, to repeal the revenue act of 1918 (with certain exceptions) and to reenact it with certain changes. The conferees having agreed upon the general plan of the Senate amendments as to the form of the bill, it is necessary for the House to recede on a large number of formal amendments required by the change in the form of the bill.

farms, mines, etc. located outside the United States. Appendix, sec. 217(c)(5). The House's version also contained similar express sourcing rules for personal property both "produced" and "sold" within or without the United States. Appendix, sec. 217(a)(7), sec. 217(c)(7). The House's version also contained language as to personal property produced (in whole or in part) within and sold without the United States, language which was retained in section 217(e) of the Revenue Act of 1921 as enacted and language now in section 863(b)(2) upon which the majority relies. Appendix, sec. 217(e); appendix II to majority opinion. The House's version defined the term "produced" to include "extracted" and "processed."

The Senate's version of H.R. 8245 eliminated the express sourcing rules for natural resources, i.e., the House's sections 217(a)(5), 217(c)(5). The Senate's version also eliminated the express sourcing rules for personal property both "produced" and "sold" within or without the United States, i.e., the House's sections 217(a)(7) and 217(c)(7). The Senate instead gave the Secretary wide latitude to promulgate sourcing rules (section 217(e), now section 863(a)), as to both natural resources and certain personal property. The Senate's version retained the House's language as to "personal property produced (in whole or in part) by the taxpayer within the United States and sold without the United States," the section 863(b)(2) language which the majority now regards as limiting the Secretary's rule-making authority in regard to natural resources. The Senate version also maintained the House's definition of the word "produced." The Senate's version was adopted in conference. H.R. 8245 (67th Cong., 1st Sess. (Nov. 19, 1921)).

The Senate Finance Committee held hearings on H.R. 8245 between September 1, 1921, and October 1, 1921, and these hearings provide an explanation of the above amendments. The principal witness at the hearings was Dr. Thomas Sewall Adams, the Economic Advisor of the Treasury Department, who is considered to have been the "father" of the Senate bill.[3] During the course of the

---

[3]*Du Pont de Nemours & Co. v. United States,* 200 Ct. Cl. 391, 398 and n.6, 471 F.2d 1211, 1214 (1973); *United States v. Rogers,* 122 F.2d 485, 491 (9th Cir. 1941) (dissenting opinion); *Ohio Nat. Life Ins. Co. v. United States,* 11 Cl. Ct. 477, 479 (1986), affd. 807 F.2d 1577 (Fed.

hearings, Dr. Adams testified, in part, as follows:

Dr. Adams. Page 48, lines 5 to 8: This is the foreign traders. It is proposed to strike out paragraphs 5 and 7. Paragraph 5 relates to "gains, profits, and income from the ownership or operation of any farm, mine, oil or gas well, other natural deposits, or timber, located in the United States, and from any sale by the producer of the products thereof."

This says that the gains or profits and all that kind of thing shall be taxed in the United States if the property is here. *That is a sound rule and will go without saying in the average case. There are some cases where possibly it ought not to apply.* For instance, we have a number of important American business enterprises at the present time owning mines in Canada which have their factories over here and bring this stuff over. This would deprive us of any tax in that case.

Senator Reed. The present language?

Dr. Adams. The present language would. *The present language puts favor on the situs of the mine or property; that is the general rule and will be followed,* but there is occasionally a case where the factory is located elsewhere or where the element of location is very important, and I think we should be silent on it.

*This present thing is what might be called a natural rule applied absolutely in every case. There will be no trouble about the way the average case is decided; it will take care of itself.*[4] *But I think there is a case where you want to temper it.*

The Chairman. If there is no objection, the amendment will be adopted.

Dr. Adams. * * *

I suggest that [this paragraph] be stricken out, with the similar paragraph on page 49, which relates to the foreigner and applies the same rule to business without the United States. *My suggestion is that this be stricken out to leave it a little more elastic.*

[Emphasis supplied.]

Hearings before the Committee on Finance, U.S. Senate, H.R. 8245, 67th Cong., 1st Sess. (Sept. 1, 1921, to Oct. 1, 1921), 309-310. Dr. Adams' testimony reveals that the intent underlying the amendments was to allow the Secretary more flexibility through legislative silence. This flexibility would preserve what Dr. Adams called "the natural rule" or the general rule—sourcing of income from the production and sale of natural resources would depend on the situs of the resources in the ground—while simultaneously allowing room for the development of rules allocat-

---

Cir. 1986), which clearly identify Dr. Adams as "the Treasury expert" and the "father" of the 1921 Act.

[4]Dr. Adams could not anticipate, of course, that the first case would be heard in the Tax Court 70 years after the 1921 Act's enactment when no one alive remembers the "natural rule."

ing income between foreign and domestic sources where significant production took place outside the taxing jurisdiction where the resources were located.

The same statutory scheme introduced in the Revenue Act of 1921 exists today without any material change or modification. Apart from the items expressly sourced in the statute itself (section 217(a) and (c), now sections 861 and 862), the Secretary was given the power to allocate or apportion items of gross income to sources within or without the United States (section 217(e)—now section 863(a)). As to those items of gross income "separately allocated to sources within the United States," all of the net income therefrom was U.S. source income (section 217(e), now section 863(a)). Here the regulations "separately allocated to sources within the United States," the gross income from natural resources located within the United States, and all net income therefrom is U.S. source income. It is only as to items of gross income not already "separately allocated" to either sources within or sources without the United States that the Secretary allocates or apportions between U.S. source and foreign source income. It is only in this dual-source apportionment context that the language in regard to "the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States" (section 863(b)(2)) comes into play. Accordingly, I am satisfied that natural resources are not "personal property" as that term is used in section 863(b), and that section 1.863-1(b), Income Tax Regs., is a valid exercise of the rule-making authority granted the Secretary under section 863(a).

The majority observes that the statutory language found in present sections 863(a) and (b) originated in section 217(e) of the Revenue Act of 1921. The majority fails to point out, however, that the regulatory language found in present section 1.863-1(b), Income Tax Regs., originated in Reg. 62, Art. 326, first promulgated in 1922 as T.D. 3295. It seems safe to call this regulatory language "a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent." *National Muffler Dealers Association Inc. v. United States,* 440 U.S. 472, 477 (1979); *Rowan Cos. v. United States,* 452

U.S. 247, 253 (1981). Moreover, this regulatory language has remained in effect for 69 years without any material change or modification. The Congress and the Department of the Treasury put the issue to rest in 1921 and 1922, and until now there has been no need to revisit it. See *supra*, p. 47 note 4. As the Supreme Court has held:

> Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law. [Fn. omitted.]

*Helvering v. Winmill*, 305 U.S. 79, 83 (1938) and its progeny. Finally, respondent has consistently applied the regulation. See generally Rev. Rul. 71-198, 1971-1 C.B. 210; Rev. Rul. 67-194, 1967-1 C.B. 183; G.C.M. 36328, CC:I-5103 (July 1, 1975); G.C.M. 34971, CC:I:I-4331 (July 31, 1972); I.T. 2440, VII-2 C.B. 282 (1928).

To recapitulate, the statute is silent and possibly contains an ambiguity as to natural resources. I look to the history of the sourcing rules and the origins of section 863 in section 217(e) of the Revenue Act of 1921. Dr. Adams' testimony before the Senate Finance Committee answers my inquiry. In passing section 217(e) of the Revenue Act of 1921, the Congress intended to give the Secretary flexibility to draft a regulation which would preserve the "natural rule" or the general rule—sourcing of income from the production and sale of natural resources would depend on the situs of the resources in the ground—but which would simultaneously allow for fine tuning in specific situations where significant production took place outside the taxing jurisdiction where the resources were located. Reg. 62, Art. 326 carried out the Congress' intent; similarly, present day section 1.863-1(b), Income Tax Regs., still carries out the Congress' intent under the authority given the Secretary in section 863(a). The language contained in section 1.863-1(b), Income Tax Regs., was drafted immediately after the enactment of the Revenue Act of 1921, has been in effect for 69 years, and has been consistently administered. This Court should not invalidate it at this late date.

SWIFT and PARR, *JJ.*, agree with this dissent.

### APPENDIX

As it passed the House, section 217 of H.R. 8245 provided, in part, as follows:

Sec. 217. (a) In the case of a nonresident alien individual or foreign trader, the following items of gross income shall be treated as derived in full from sources within the United States:

(1) Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise (except interest received from foreign traders or foreign trade corporations, and interest on deposits in banks, banking associations, and trust companies paid to persons not engaged in business within the United States and not having an office or place of business therein);

(2) Dividends from domestic corporations other than foreign trade corporations;

(3) Compensation for labor or personal services performed in the United States;

(4) Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States, patents, copyrights, secret processes and formulae, good will, trade-marks, trade brands, franchises, and other like property;

(5) Gains, profits, and income from the ownership or operation of any farm, mine, oil or gas well, other natural deposit, or timber, located in the United States, and from any sale by the producer of the products thereof;

(6) Gains, profits, and income from the sale of real property located in the United States;

(7) Gains, profits, and income from the sale of personal property, both purchased and sold, or both produced and sold by the taxpayer within the United States.

\*      \*      \*      \*      \*      \*      \*

(c) The following items of gross income shall not be included as income from sources within the United States:

(1) Interest other than that derived from sources within the United States as provided in paragraph (1) of subdivision (a);

(2) Dividends from foreign corporations and from foreign trade corporations;

(3) Compensation for labor or personal service performed without the United States;

(4) Rentals or royalties from property located without the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using without the United States, patents, copyrights, secret processes and formulae, good will, trade-marks, trade brands, franchises, and other like property;

(5) Gains, profits, and income from the ownership or operation of any farm, mine, oil or gas well, other natural deposit or timber, located

without the United States, and from any sale by the producer of the products thereof;

(6) Gains, profits, and income from the sale of real property located without the United States;

(7) Gains, profits, and income from the sale of personal property both purchased and sold or both produced and sold by the taxpayer without the United States.

*   *   *   *   *   *   *

(e) Except as otherwise provided in subdivisions (a) and (c), gains, profits, and income are (for the purposes of this title) derived partly from sources within and partly from sources without the United States, when derived (1) from transportation or other services rendered partly within and partly without the United States, or (2) from the sale of personal property produced (in whole or part) by the taxpayer within the United States and sold without the United States, or produced (in whole or part) by the taxpayer without the United States and sold within the United States. In the case of such income and of any other income (except that specified in subdivisions (a) and (c)) the net income shall first be computed by deducting the expenses, losses, or other deductions apportioned or allocated thereto, and a ratable part of any expense, losses, or other deductions which can not definitely be allocated to some item or class of gross income. The portion of such net income attributable to the sale, production, or service rendered within the United States (which shall be taxed as income from sources within the United States) shall be determined by reasonable processes of allocation or apportionment under regulations to be prescribed by the commissioner with the approval of the Secretary.

(f) As used in this section the words "sale" or "sold" include "exchange" or "exchanged"; and the word "produced" includes "created," "fabricated," "manufactured," "extracted," "processed," "cured," or "aged."