MICHAEL MONTANA AND SUSAN MONTANA, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Montana v. Commissioner
Docket Nos. 5594-91, 9764-91, 24507-91
United States Tax Court
T.C. Memo 1994-111; 1994 Tax Ct. Memo LEXIS 112; 67 T.C.M. (CCH) 2422; March 21, 1994, Filed *112 Orders and decisions will be entered granting respondent's motion for summary judgment. For petitioners: Richard S. Kestenbaum and Bernard S. Mark. For respondent: George Soba. DAWSON, PANUTHOS
DAWSON
MEMORANDUM OPINION DAWSON, Judge: These cases were assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [2] The Court agrees with and adopts the Chief Special Trial Judge's opinion, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Michael Montana and Susan Montana, Docket No. 5594-91
Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661
1986
$ 15,750
$ 788
50% of the in-
$ 3,938
terest due on
$ 15,750
*113 Mark Rose, Docket No. 9764-91
Year
Deficiency
1984 [1]
$ 224,512
Mark S. and E. Joy Rose, Docket No. 24507-91
Additions to Tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
1986
$ 2,918
$ 146
50 percent of the interest due
on $ 2,918
Respondent also determined that in docket Nos. 5594-91 and 24507-91 petitioners were liable for increased interest pursuant to section 6621(c). Timely petitions were filed in these cases. At the time of the filing of the petitions, petitioners resided in Patchogue, New York. This matter is before the Court on respondent's motion for summary judgment pursuant to Rule 121. The issue for decision in these cases is whether petitioners are entitled to a business energy investment credit (hereinafter sometimes referred to as the energy credit). Respondent maintains that the property for which the credit is being claimed does not constitute "biomass property" (sec. 48(1)(15)) and therefore petitioners' investment in the property is not eligible for a 15-percent business energy *114 investment credit provided for under section 38. Petitioners object to the motion on the ground that there is a genuine issue of material fact which renders summary judgment inappropriate. Background
Petitioners Michael Montana and Mark Rose, along with Frederick Rose, were partners in Oyster Bay Waste Electric Generation Partners (hereinafter referred to as the partnership). In September 1985, the partnership purchased a landfill gas recovery and electric generation system (hereinafter referred to as the equipment) for operation at a municipal landfill located in Oyster Bay, New York. The partnership's business objective was to generate electric power by converting landfill gas into fuel, which in turn would produce electricity. The electricity generated by this gas was then to be sold to a local utility company. The equipment consists of a series of gas collection wells placed in the landfill waste. The wells are connected by a piping system which directs the landfill gas to power generating equipment. The generating equipment amounts to three modules consisting of gas compressors, internal combustion engines, generators, transformers and oil circuit breakers. The *115 purchase price of the equipment was $ 3,500,000. [3] The equipment was installed late in 1985 and final connection to the local utility company was made in the early part of 1986. Landfill gas is a by-product of the decomposition of municipal solid wastes deposited at a landfill. As the landfill waste breaks down through natural causes, landfill gas collects in voids in the waste. The wells are placed strategically in the landfill waste to collect this gas. Landfill gas consists of methane (approximately 50 to 58 percent) and carbon dioxide (35 to 45 percent), as well as small amounts of other gasses and trace elements. Methane is the primary component of natural gas, comprising approximately 95 percent of natural gas. Documents which describe the landfill gas operation and which were presented by petitioners to respondent's counsel indicate that the collection of methane from *116 municipal waste is vital for the success of the operation. Furthermore, petitioners alleged in the petitions filed in these dockets that "during 1986, the Partnership engaged in the business of generating electric power by converting methane gas at the Old Bethpage (Long Island, New York) landfill." The partnership claimed on its amended 1986 partnership return a 10-percent regular investment credit ($ 350,000) based upon the cost basis of the equipment. [4] The partnership also claimed a 15-percent business energy investment credit ($ 525,000) for the same equipment. Petitioners, in turn, each claimed on their income tax returns an allocable portion of the partnership's claimed regular investment credit and business energy investment credit. *117 Respondent concedes that the partnership, and, therefore, petitioners, are entitled to the 10-percent regular investment credit for the equipment. However, respondent maintains that no portion of the equipment is eligible for the business energy investment credit. Discussion
1. Summary Judgment
Under Rule 121(b), a decision of summary judgment may be "rendered if the pleadings, answers to interrogatories, depositions, admissions and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Naftel v. Commissioner, 85 T.C. 527, 529 (1985); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). [5] The moving party (respondent) bears the burden of proving that there is no genuine issue of material fact. Marshall v. Commissioner, 85 T.C. 267, 271 (1985). Factual inferences are read in the light most favorable to the party opposing the summary judgment. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Espinoza v. Commissioner, supra. *118 The only disagreement between the parties is whether landfill gas constitutes an "alternate substance" for purposes of section 48(1)(15). Based upon the documents attached to the various filings by the parties, we conclude that there is not a genuine issue of material fact. Accordingly, summary judgment is appropriate. 2. Business Energy Investment Credit
Section 38(a)(2) provides for a current year business credit against income tax which is composed in part of an investment credit. Sec. 38(b)(1). The investment credit includes the business energy investment credit (sec. 46(a)(2)) which is available for investments by business taxpayers in certain property. *119 The purpose of the energy credit is to stimulate the use of alternative sources of energy in an industrial process. H. Rept. 95-496 (Part III) (1977), 1978-3 C.B. (Vol. 2) 71, 81-85, 177-188; S. Rept. 95-529 (1977), 1978-3 C.B. (Vol. 2) 199, 205-211, 272-274. In order for the energy credit to be available, the taxpayer must have invested in what is known as "section 38" property, as defined in section 48. Section 38 property is comprised in part of tangible depreciable property (except buildings and their structural components) used as an integral part of furnishing electrical energy. Sec. 48(a)(1)(B)(i). This type of property includes "energy property", a component of which is "alternative energy property". [6] *120 Sec. 48(l)(1) and (2)(A)(i). The equipment must constitute a specific type of alternative energy property referred to as "biomass property". [7] Sec. 48(1)(15). Section 48(l)(15) was enacted by the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96-223, sec. 222(a), 94 Stat. 229, 261, and it modified section 48(l)(3). Congress' intent by enacting section 48(1)(15) was to extend the energy-related incentives, first initiated with the Energy Tax Act of 1978, to increase the use of waste products and other biomass as an energy source. S. Rept. 96-394 at 80, 85-86 (1979), 1980-3 C.B. 131, 198, 203-204. [8]
*121 In order for the property in issue to constitute "biomass property", the property must burn an "alternate substance" as its primary fuel. Sec. 48(1)(3) (A)(i) and (ii). Section 48(1)(3)(B), as modified by sec. 48(l)(15)(B), defines an alternate substance generally as any substance other than: (1) Oil and natural gas or any product of oil and natural gas, (2) coal (including lignite) or any product of such coal, and (3) any inorganic substance. Petitioners argue that the landfill gas is not "natural gas", and, therefore, it is an alternate substance. However, petitioners interpret the statutory language too narrowly and, as a result, their interpretation contradicts the express language of the regulations. In particular, section 1.48-9(c)(2)(i), Income Tax Regs., defines "alternate substance" as follows: An alternate substance is any substance or combination of substances other than an oil or gas substance. Alternate substances include coal, wood, and agricultural, industrial, and municipal wastes or by-products. Alternate substances do not include synthetic fuels or other products that are produced from an alternate substance and that have undergone a chemical change *122 as described in paragraph (c)(5)(ii) of this section. For example, methane produced from landfills is not an alternate substance; rather it is a synthetic fuel produced from an alternate substance * * * [Emphasis added.]
Section 1.48-9(c), Income Tax Regs., is a legislative regulation promulgated pursuant to a specific delegation of legislative authority pursuant to former section 38(b). [9] *123 Legislative regulations are entitled to an especially high degree of deference. Phillips Petroleum Co. v. Commissioner, 97 T.C. 30, 34 (1991). Insofar as such a regulation is not in conflict with express statutory provisions, it has the force and effect of law. Estate of Whitlock v. Commissioner, 59 T.C. 490, 499 (1972) (citing Maryland Casualty Co. v. United States, 251 U.S. 342, 349 (1920)). [10]
Petitioners attempt to distinguish their case from the language in the regulation by stressing that methane is only one of several elements which comprise landfill gas; therefore, they argue that landfill gas is different than "methane produced from landfills". However, this is merely a matter of semantics and we will look to substance over form. In addition to the language contained in the regulation, much of the language contained in the documents pertaining to the landfill gas operation indicates that the success of the operation depends upon the extraction of amounts of methane from the landfill waste. In particular, one document states that the methane content of landfill gas is the only constituent of economic value, for which the best use of the methane *124 is to burn the gas to create on-site heat, steam, or electricity. Furthermore, petitioners indicate in the pleadings that the objective of the partnership was the conversion of methane from landfill waste. The use of the term "landfill gas" is somewhat misleading because the recovery project really seeks the acquisition of methane. The documentation which petitioners rely upon does not adequately establish that, for purposes of the business energy investment credit, landfill gas is distinct from "methane produced from landfills", and is, therefore, an alternate substance. Despite petitioners' argument, the pertinent regulation in this case provides that the gas which is burned by the equipment of the partnership; i.e., methane gas produced from landfill waste, is not an alternate substance. Petitioners claim entitlement to the credit pursuant to sections 48(l)(3)(A)(i) and (ii) and 48(a)(15), claiming that the equipment is biomass property that burned an alternate substance as a primary fuel. Having concluded that the methane gas constituting the primary fuel burned by the equipment is not an alternate substance, we hold that the equipment does not constitute biomass property *125 as defined in the above mentioned sections, and therefore, as a matter of law, petitioners are not entitled to a business energy investment credit pursuant thereto. As noted in supra note 6, petitioners do not seek qualification pursuant to section 48(l)(3)(A)(iii). Therefore, we need not and do not express an opinion as to qualification pursuant to that subsection. Accordingly, respondent's motion for summary judgment will be granted. To reflect the foregoing, Orders and decisions will be entered granting respondent's motion for summary judgment. Footnotes
1. Cases of the following petitioners were consolidated for purposes of trial, briefing and opinion: Mark Rose, docket No. 9764-91; Mark S. and E. Joy Rose, docket No. 24507-91.↩
2. All section references are to the Internal Revenue Code in effect for the tax year 1986 unless otherwise noted. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. The deficiency for this year is the result of a disallowance of an investment credit carried back from 1986.↩
3. Respondent conceded that the sale of the equipment was bona fide and that the transaction was entered into for profit by petitioners.↩
4. For purposes of calculating the regular investment credit and the energy credit, the amount of the credit is equal to a certain percentage of the "qualified investment" in the property. Sec. 46(a)(1) and (2) and (b). The qualified investment is arrived at by multiplying the basis of the property by the applicable percentage. Sec. 46(c)(1) and (2). In the instant case, the applicable percentage is 100; therefore, the qualified investment is equivalent to the cost basis.↩
5. Summary judgment under Rule 121 is derived from rule 56, Federal Rules of Civil Procedure. See note to Rule 121, 60 T.C. 1127-1128. Therefore, the history and authority interpreting rule 56, Federal Rules of Civil Procedure, are relevant. See Hoeme v. Commissioner, 63 T.C. 18, 21↩ (1974).
6. Sec. 48(l) provides in pertinent part: (3) Alternative energy property. -- (A) In general. -- The term "alternative energy property" means -- (i) a boiler the primary fuel for which will be an alternate substance, (ii) a burner (including necessary on-site equipment to bring the alternate substance to the burner) for a combuster other than a boiler if the primary fuel for such burner will be an alternate substance, (iii) equipment for converting an alternate substance into a synthetic liquid, gaseous or solid fuel,
Petitioners stated in their objection to respondent's motion that they are seeking to qualify for the credit pursuant to sec. 48(l)(3)(A)(i) and (ii) and not pursuant to (iii).↩
7. The parties do not appear to dispute that, in order for petitioners to be entitled to the energy credit, the equipment must constitute "biomass property".↩
8. Biomass is generally any organic substance other than oil, natural gas, or coal, or a product of oil, natural gas, or coal. This includes municipal and industrial waste, sewage, sludge, grain, wood, and oceanic and terrestrial crops. Staff of Joint Comm. on Taxation, General Explanation of the Crude Oil Windfall Profit Tax Act of 1980, at 76. (J. Comm. Print 1981).↩
9. Former sec. 38 was repealed by Part A of the Deficit Reduction Act of 1984, and was replaced by the statutory language as in effect for the years in issue. Part A of the Deficit Reduction Act of 1984, Pub. L. 98-369, secs. 473 and 474(m), 98 Stat. 827, 833.↩
10. Petitioners indicated in their response to respondent's interrogatories, which were attached to their filings, that, at the time of the response, they were not contesting the validity of sec. 1.48-9(c), Income Tax Regs.↩ Petitioners have not indicated otherwise; therefore, we deem that petitioners conceded the validity of the regulation.