ROBERT O. FOWLER, JR., AND PAULA E. FOWLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6760-90.          Filed April 22, 1992.

*William H. Schmidt* and *Gary P. Brady,* for petitioners.
*Louise R. Forbes,* for respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1986 of $110,364 and an addition to tax under section 6661(a)[1] of $27,591. Respondent having conceded the addition to tax, the issue for decision is whether petitioners may elect 10-year averaging of a lump-sum distribution received in 1986 without making such election for another lump-sum distribution received and rolled over in that year.

This case was submitted fully stipulated pursuant to Rule 122(a). All the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by reference.

Petitioners, husband and wife, were residents of Lexington, Massachusetts, at the time their petition was filed. They filed a joint Federal income tax return on the cash basis for 1986 with the Internal Revenue Service Center, Andover, Massachusetts. Petitioners filed an amended return for 1986 with the Internal Revenue Service Center, Andover, Massachusetts, on January 24, 1989.

On November 30, 1985, Robert O. Fowler, Jr. (Fowler), terminated his employment with Leslie E. Robertson Associates (Robertson Associates). At that time, Fowler had participated in Robertson Associates' profit-sharing plan since January 1, 1969, and in its incentive savings plan since January 1, 1981. Both plans were qualified under section 401(a).

---

[1] All statutory references are to the Internal Revenue Code in effect for 1986, and all Rule references are to the Tax Court Rules of Practice and Procedure.

During 1986, Fowler received a total distribution from the profit-sharing plan of $175,782.81 and a total distribution from the incentive savings plan of $112,190.19.[2] Pursuant to section 402(a)(5), see *infra* note 3, Fowler rolled over $77,906.38 of the incentive savings plan distribution into an individual retirement account with Chubb Securities Corp. representing the total taxable amount received from that account. No portion of the distribution from the profit-sharing plan was rolled over.

Petitioners did not report either of the distributions on their 1986 Federal income tax return.

On their 1986 amended return, petitioners reported the two distributions and the rollover of $77,906.38. They elected the 10-year averaging method provided by section 401(e) for reporting the profit-sharing distribution.

Respondent determined that the $125,318.85 of ordinary income Fowler received from the profit-sharing plan did not qualify for 10-year averaging under section 402(e)(1) and was therefore taxable in full to petitioners in 1986.

Under section 401(a), amounts distributed from a qualified pension or profit-sharing plan are generally taxable to the recipient under section 72 in the year of distribution. However, section 402(e)(1) provides a preferential 10-year averaging[3] method for purposes of computing the tax on lump-sum distributions. The parties agree that amounts received by petitioner in 1986 constitute lump-sum distributions under section 402(e)(4)(A). If a taxpayer elects 10-year averaging, the ordinary income portion of the lump-sum distributions received in the taxable year are treated as though they were the only income and were received evenly over a 10-year

---

[2]The parties have stipulated as follows:

8. During 1986, the petitioner, due to his termination of employment * * * received a total distribution from his employer's Incentive Savings Plan in the amount $112,190.19, which represented $34,283.81 in employee contributions, $69,906.38 in ordinary income, and an $8,000.00 IRA contribution.

\* \* \* \* \* \* \*

11. During 1986, the petitioner, due to his termination of employment * * * received a total distribution from his employer's Profit Sharing Plan in the amount of $175,782.81, which represented $125,318.85 in ordinary income and $50,463.96 in capital gain.

[3]The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122 (a)(2), 100 Stat. 2085, 2466, replaced the 10-year period with a 5-year period.

period. Section 402(e)(2) provides a look-back 6-year calculation of lump-sum distributions in order to determine the rate of tax to be applied to each year of the 10-year spread. The 10-year method enables a taxpayer to avoid the higher marginal tax rate that often results from the bunching of income in the year of distribution.

Another option available to taxpayers receiving lump-sum distributions is provided by section 402(a)(5). Under that section,[4] if a taxpayer transfers all or part of a lump-sum distribution "paid to him" to an "eligible retirement plan", such amount is excluded from the taxpayer's gross income for the taxable year in which paid.

Petitioners seek to obtain the benefits of section 402(e)(1) with respect to the amount received from the profit-sharing plan, and, at the same time, take advantage of the rollover permitted by section 402(a)(5) with respect to amounts received from the incentive savings plan, both distributions having been received in 1986. Respondent contends that 10-year averaging is available only to taxpayers electing to report *all* lump-sum distributions received in the taxable year and that because petitioner rolled over the incentive savings distribution, 10-year averaging is not available with respect to the profit-sharing distribution.[5]

The arguments of the parties focus on the impact of two statutory provisions. The first provision, section 402(e)(2), provides in pertinent part:

(2) MULTIPLE DISTRIBUTIONS AND DISTRIBUTIONS OF ANNUITY CONTRACTS.—In the case of any recipient of a lump sum distribution for the taxable year with respect to whom during the 6-taxable-year period ending on the last day of the taxable year there has been one or more other lump

---

[4]Sec. 402(a)(5) provides in pertinent part as follows:

(5) ROLLOVER AMOUNTS.—
    (A) GENERAL RULE.—If—
        (i) any portion of the balance to the credit of an employee in a qualified trust is paid to him,
        (ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and
        (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

[5]In Priv. Ltr. Rul. 7928017 (Apr. 10, 1979), respondent took the same position. We note that a private letter ruling has no precedential value. Sec. 6110(j)(3); *Estate of Jalkut v. Commissioner*, 96 T.C. 675, 684 (1991).

sum distributions after December 31, 1973, or if the distribution (or any part thereof) is an annuity contract, in computing the tax imposed by paragraph (1)(A), *the total taxable amounts of all such distributions during such 6-taxable-year period shall be aggregated* * * * [Emphasis added.]

The second provision, section 402(e)(4)(B), provides in pertinent part:

(B) ELECTION OF LUMP SUM TREATMENT.—For purposes of this section and section 403, no amount which is not an annuity contract may be treated as a lump sum distribution under subparagraph (A) unless the taxpayer elects for the taxable year to have *all such amounts* received during such year so treated at the time and in the manner provided under the regulations prescribed by the Secretary.[6] * * * [Emphasis added.]

Petitioners maintain that a proper interpretation of the phrase "all such amounts" in section 402(e)(4)(B) should be construed to mean "all such taxable amounts" of the distributions consistent with the phrase "total taxable amounts of all such distributions" in section 402(e)(2). They assert that a literal interpretation of the statutory language is contrary to the legislative history and undermines the objectives which Congress sought to achieve in providing for the 10-year averaging method. Respondent argues that paragraphs (2) and (4)(b) of section 402(e) deal with differing aspects of the tax treatment of lump-sum distributions and that we should adhere to the plain meaning of section 402(e)(4)(B). For the reasons hereinafter set forth, we agree with respondent.

We again look to the most recent Supreme Court guidelines for statutory construction. See *Guilzon v. Commissioner*, 97 T.C. 237, 239 (1991), on appeal (5th Cir., Mar. 2, 1992). In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-242 (1989), the Court stated:

The task of resolving the dispute over the meaning of [the statute] begins where all such inquiries must begin: with the language of the statute itself. * * *

\*   \*   \*   \*   \*   \*   \*

The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result

---

[6]This section was substantially revised by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122 (a)(1), 100 Stat 2085, 2466.

demonstrably at odds with the intentions of its drafters." * * * [Citations omitted.]

See also *Demarest v. Manspeaker,* 498 U.S. 184, 111 S. Ct. 599, 604 (1991).

Petitioners argue that section 402(e)(4)(B), interpreted in light of its legislative history, applies only to *taxable* lump-sum distributions received in a single year. That being the case, petitioners contend that only the profit-sharing distribution is subject to section 402(e)(4)(B) because the incentive savings distribution, rolled over into an eligible retirement account under section 402(a)(5), is nontaxable. In support of their argument, petitioners assert that section 402(e)(4)(B) is merely an extension of the interyear aggregation rule of section 402(e)(2), which applies to "the total *taxable* amounts of all such distributions". We disagree.

Petitioners' conclusion that section 402(e)(4)(B) is merely an "extension" of section 402(e)(2) is mistaken. Section 402(e)(2) was designed to prevent tax avoidance possibilities. See H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 387. It embodies a rule covering both interyear and intrayear distributions, including the taxable year. Such being the case, there was no need for an additional intrayear provision, i.e., section 402(e)-(4)(B), to prevent tax avoidance. While the underlying purpose of section 402(e)(4)(B) is not similarly articulated and the legislative history in respect of that section is sparse, there is a revealing sentence in the conference report:

> The House bill requires that a taxpayer who wishes to use the special averaging and capital gains treatment described above for one lump-sum distribution *must use that treatment for the aggregate of the lump-sum distributions he receives in the same taxable year.* The Senate amendment and existing law contain no comparable provision. The conference substitute accepts the House rule. [H. Conf. Rept. 93-1280 (1974), 1974-3 C.B. 415, 510; emphasis added.]

Moreover, in H. Rept. 93-807, *supra,* the House Ways and Means Committee stated:

> A recipient of a distribution could not use this special ten-year-averaging method unless he combines all amounts received in any taxable year that *might be eligible* for this special averaging system into a single lump-sum distribution. * * * [1974-3 C.B. (Supp.) at 388; emphasis added.]

Such statements more than counteract petitioners' reliance on the fact that both paragraph (2) and paragraph (4)(B) of

section 402(e) are discussed in close proximity in the legislative history and their assertion that this implies that both paragraphs serve the same tax avoidance purpose. Had Congress intended that section 402(e)(4)(B) apply only to taxable distributions, it could have easily inserted the word "taxable" in the pertinent language of that section.

Moreover, petitioners misconstrue the meaning of the phrase "total taxable amounts of all such distributions" contained in section 402(e)(2). That phrase is not the same as "total amounts of gross income", which is the interpretation petitioners ask us to adopt. This lack of sameness is clearly reflected in the manner in which Congress constructed the definition of "total taxable amount" in section 402(e)(4)(D). Thus, clause (i) of that section provides that the amounts of contributions by the employee which are usually to be subtracted from the amount of the distribution to determine the amount includable in gross income should be reduced, before such subtraction, by amounts previously "distributed to him which were not includible in gross income". Thus, the "total taxable amount" is different from the "gross income" amount.

A further reflection of this lack of sameness is contained in section 402(e)(2) itself which provides that the taxable amount of a distribution, solely for the purpose of aggregation under that section to determine the applicable tax bracket, includes the "actuarial value" of an annuity contract, a value which is not usually included in gross income. See H. Rept. 93-807, *supra,* 1974-3 C.B. (Supp.) at 388; S. Rept. 93-383 (1974), 1974-3 C.B. (Supp.) 80, 220; H. Conf. Rept. 93-1280, *supra,* 1974-3 C.B. at 510.

Finally, we read the provision of section 402(a)(5), see *supra* note 3, as providing for a condition subsequent to payment, and therefore receipt, of the rolled-over distribution. Absent an election to roll over (which can occur any time within 60 days of receipt) the distribution, if otherwise qualified, would be treated as a lump-sum distribution and required to be included in the 10-year averaging computation.

Petitioners argue that a literal reading of section 402(e)(4)-(B), so as to deprive a taxpayer who elects to roll over a lump-sum distribution under section 402(a)(5), imposes a substantial hidden cost on the exercise of a statutory right and that such a hidden cost was not intended by Congress. We are not

convinced that such a result was not intended. An election to use the 10-year averaging method requires a conscious choice on the part of the taxpayer, and there are a variety of considerations which should be taken into account in deciding whether the election should be made. See Satterfield, "Federal Income Taxation of a Lump Sum Distribution from a Qualified Employee Benefit Plan", 35 Baylor L. Rev. 413, 460-461 (1983). The so-called "hidden cost" is an element of that choice which, when made, may not necessarily involve such a cost.

Petitioners also contend that section 402(e)(4)(B) does not address any perceived tax abuse. Section 402(e)(4)(B), as previously stated, was not designed to prevent tax avoidance but was included in section 402 to impose a condition of election (election must be made with respect to all lump-sum distributions received in a single taxable year) on taxpayers wishing to report lump-sum distributions under the 10-year averaging method provided in section 402(e)(1). Petitioners have not convinced us otherwise.

Finally, petitioners argue that a literal reading of section 402(e)(4)(B) leads to absurd results. In support of their argument, petitioners provide several examples of the disparate treatment among taxpayers that emanates from a literal application of section 402(e)(4)(B). Granted that a literal reading may, under certain circumstances, produce results that were not anticipated by Congress at the time the statute was originally drafted, but this consequence is not sufficient, in and of itself, to warrant a departure from the plain meaning of the statute. Should a literal interpretation of section 402(e)(4)(B) result in a gap in the statute imposing a claimed hardship or inequity on taxpayers, it is up to Congress, and not the courts, to deal with the inadequacies. *Hanover Bank v. Commissioner,* 369 U.S. 672, 687 (1962); *Chronicle Publishing Co. v. Commissioner,* 97 T.C. 445, 452 (1991); *Guilzon v. Commissioner,* 97 T.C. 237, 240 (1991) (quoting *Badaracco v. Commissioner,* 464 U.S. 386, 398 (1984)); *Metzger Trust v. Commissioner,* 76 T.C. 42, 60 (1981), affd. 693 F.2d 459 (5th Cir. 1982). In applying the principles of statutory construction articulated in this opinion, we have also been cognizant of *Giardino v. Commissioner,* 776 F.2d 406 (2d Cir. 1985), which dealt with a question involving the interpretation of section 402(e)(4) for the purposes of the statutory exclusion of lump-sum distribu-

tions from the gross estate under section 2039(c).  In that case, the positions of the parties were reversed with the taxpayer arguing for a literal reading of the statute and the Government urging a more flexible interpretation.  The Court of Appeals rejected the Government's position and concluded that the explicit statutory language should control, despite the Government's contention that such a result would produce an "absurd" result.  See *Giardino v. Commissioner, supra* at 409 n.9; see also *Estate of Rosenberg v. Commissioner,* 86 T.C. 980, 990 (1986), affd. per curiam 812 F.2d 1401 (4th Cir. 1987).

We conclude that the failure of petitioners to include the rolled-over distribution from the incentive savings plan invalidates their election to use the 10-year averaging method as to the profit-sharing distribution.

In order to take into account respondent's concession,

*Decision will be entered under Rule 155.*