VIRGIL D. RATH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JAMES R. SANGER AND MARJORIE F. SANGER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3984–92, 4017–92.[1]     Filed September 8, 1993.

*Timothy G. Schally,* for petitioners.
*Mark J. Miller,* for respondent.

OPINION

HAMBLEN, *Chief Judge:* Respondent determined a deficiency of $15,000 in petitioner Virgil D. Rath's Federal

---

[1] These cases were consolidated for trial, briefing, and opinion by order of this Court dated Jan. 26, 1993.

income tax liability for the 1986 taxable year. In addition, respondent determined a deficiency of $48,999 in petitioners James R. Sanger and Marjorie F. Sanger's joint Federal income tax liability for the 1986 taxable year.

After concessions, the sole issue for decision is whether Virgil D. Rath and James R. Sanger, shareholders of a subchapter S corporation, are entitled to report an ordinary loss deduction under section 1244(a) arising from a sale of "section 1244 stock" by the subchapter S corporation.[2]

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Virgil D. Rath was residing in Key West, Florida, at the time he filed his petition. Petitioners James R. Sanger and Marjorie F. Sanger were residing in Roscoe, Illinois, at the time they filed their petition.

In 1971, Virgil D. Rath and James R. Sanger (hereinafter petitioners) organized a company known as Rath International, Inc. (International). At all times relevant to this case, petitioners each owned 50 percent of the shares of International. On June 1, 1985, International filed an election under section 1362(a) to operate as an S corporation as defined in section 1361(a). International operated as an S corporation throughout the taxable year ending December 31, 1986.

At all times relevant to this case, petitioners also owned 100 percent of the outstanding shares of Rath Manufacturing Co., Inc. (Rath Manufacturing).

In November 1985, Newell Co. (Newell) paid $100,000 to obtain an option to purchase 225 shares of the common stock of River City, Inc. (River City), for $250,000. In early 1986, James Dodson (Dodson), petitioners' financial adviser, became aware that Newell held the option to purchase the River City stock and that Newell had decided not to exercise the option.

During March 1986, Dodson and International acquired Newell's option to purchase the River City stock. On April 4,

---

[2] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

1986, petitioners each borrowed $125,000 from Rath Manufacturing. On that same day, petitioners used the loan proceeds to make capital contributions to International, thereby enabling International to exercise its option to purchase the River City stock. International exercised its option to purchase the River City stock on April 4, 1986.[3]

On September 9, 1986, International sold its 225 shares of River City stock for $100. On October 3, 1986, River City discontinued business operations.

The River City stock held by International qualifies as "section 1244 stock" as defined in section 1244(c).

International erroneously failed to report the loss arising from the sale of the River City stock on its 1986 Federal income tax return. Although petitioners reported the loss on the sale of the stock on their 1986 Federal income tax returns, they failed to report the loss as a flowthrough item from International pursuant to section 1366(a)(1). Petitioners reported the loss incurred on the sale of the River City stock as follows:

| Form / schedule | Virgil D. Rath | James R. Sanger | Total |
| --- | --- | --- | --- |
| Form 4797 Pt. II (sec. 1244) | $50,000 | $100,000 | $150,000 |
| Sch. D, 1. 2(a) | 74,950 | 24,950 | 99,900 |
| Total | 124,950 | 124,950 | 249,900 |

Respondent issued notices of deficiency and determined that petitioners are not entitled to report any portion of the loss arising from the sale of the River City stock as an ordinary loss under section 1244(a). Thereafter, petitioners invoked the jurisdiction of this Court by filing timely petitions for redetermination.

## Discussion

Normally, a loss incurred by an individual taxpayer on a sale or exchange of corporate stock is characterized and reported for Federal income tax purposes as a capital loss pursuant to section 165(f) and (g). The aggregate amount of capital losses that an individual taxpayer may report for a

---

[3] The parties have stipulated that the funds for the purchase ($250,000) were transferred directly from a bank account in the name of Rath Manufacturing to River City.

particular taxable year is limited by section 1211(b), which provides that capital losses may only be deducted to the extent of any capital gains plus the lower of $3,000 or the excess of such losses over such gains.

Section 1244, enacted as part of the Small Business Tax Revision Act of 1958, Pub. L. 85-866, title II, sec. 202(b), 72 Stat. 1676, provides an exception to the normal characterization rules governing capital losses and reflects Congress' effort to "aid and encourage" investment by individuals in small corporations by reducing the risk of loss on such investments. See H. Rept. 2198, 85th Cong., 2d Sess. 2 (1958), 1959-2 C.B. 709, 710; see also *Hayden v. Commissioner,* 52 T.C. 1112, 1121-1122 (1969); *Morgan v. Commissioner,* 46 T.C. 878, 892 (1966). In this regard, section 1244(a) provides:

SEC. 1244. LOSSES ON SMALL BUSINESS STOCK.

(a) GENERAL RULE.—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as an ordinary loss.

Section 1244(b) limits the maximum annual amount that a taxpayer may report as an ordinary loss under section 1244 to $50,000 for a single taxpayer, or $100,000 in the case of a husband and wife filing a joint return.

The term "section 1244 stock" is defined in section 1244(c) as the stock of a small business corporation that was issued by such corporation for money or property other than stock and securities.[4] The term "individual" is defined in section 1244(d)(4) as follows:

(4) INDIVIDUAL DEFINED.—For purposes of this section, the term "individual" does not include a trust or estate.

Section 1244(e) provides that the Secretary shall prescribe such regulations as may be necessary to carry out the purposes of the section. Section 1.1244(a)-1(b), Income Tax Regs., promulgated pursuant to this authority, describes the taxpayers entitled to enjoy the benefits of section 1244(a) as follows:

---

[4] The term "small business corporation" is defined in sec. 1361(b) and sec. 1.1244(c)-2, Income Tax Regs.

(b) *Taxpayers entitled to ordinary loss.* The allowance of an ordinary loss deduction for a loss on section 1244 stock is permitted only to the following two classes of taxpayers:

(1) An individual sustaining the loss to whom the stock was issued by a small business corporation, or

(2) An individual who is a partner in a partnership at the time the partnership acquired the stock in an issuance from a small business corporation and whose distributive share of partnership items reflects the loss sustained by the partnership. * * * In order to claim a deduction under section 1244 the individual, or the partnership, sustaining the loss must have continuously held the stock from the date of issuance. *A corporation,* trust, or estate *is not entitled to ordinary loss treatment under section 1244 regardless of how the stock was acquired.* * * * [Emphasis added.]

In sum, section 1244(a) provides a limited exception to the normal rule that a loss incurred by a taxpayer on a sale of corporate stock is properly characterized as a capital loss. Specifically, when an individual or partnership incurs a loss on the sale of stock of a small business corporation, the taxpayer is permitted to characterize the transaction as generating an ordinary (as opposed to a capital) loss.

As indicated, respondent determined that petitioners are not entitled to report any portion of the loss incurred on the sale of the River City stock as an ordinary loss under section 1244(a). Specifically, respondent determined that because the stock in question was issued to International, an S corporation, section 1244(a) does not apply and petitioners are required to report the loss as a capital loss.[5]

We begin with the observation that the plain language of section 1244(a) directs that the relief provided therein is limited to individuals and partnerships. Simply stated, ordinary loss treatment is only available where section 1244 stock is issued to an individual or a partnership and then sold by that individual or partnership at a loss. Sec. 1.1244(a)-1(b), Income Tax Regs. It is a well-established rule of statutory construction that statutes are to be construed so as to give effect to their plain and ordinary meaning unless to do so would produce absurd or futile results. *United States v. American Trucking Associations,* 310 U.S. 534, 543-544 (1940). Moreover, where a statute is clear on its face, we

---

[5] Aside from narrow exceptions not applicable here, an S corporation is not subject to Federal corporate income tax. Sec. 1363(a). Rather, the S corporation's items of income, gain, loss, deduction, and credit are passed through to the corporation's shareholders. Sec. 1366(b); *Haley Bros. Constr. v. Commissioner,* 87 T.C. 498, 505-506 (1986). As indicated, the parties agree that petitioners should have reported the loss in question as an item passing through from International.

require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein. *Halpern v. Commissioner,* 96 T.C. 895, 899 (1991); *Huntsberry v. Commissioner,* 83 T.C. 742, 747-748 (1984).

There is no indication in the pertinent legislative history that section 1244(a) was intended to apply to section 1244 stock issued to an S corporation. Indeed, the House report states in explicit terms that

The rule is limited to losses sustained by an individual; *a corporation cannot receive ordinary loss treatment under this section.* Moreover, the section does not apply to losses sustained by a partnership, trust, or estate since, pursuant to subsection (d)(4), the term "individual" does not include a partnership, trust, or estate. [H. Rept. 2198, 85th Cong., 2d Sess. 8 (1958), 1959-2 C.B. 709, 714; emphasis added.]

(While the bill as originally passed by the House was later amended by the Senate to cover losses sustained by partnerships on a sale of section 1244 stock, there is no indication that the Senate intended for the provision to apply to corporations.[6])

Were we considering section 1244 alone, our task would be a simple one. In short, the fact that International, an S corporation, purchased and sold the River City stock would ordinarily serve to preclude petitioners from reporting the loss incurred on the transaction as an ordinary loss under section 1244(a). However, petitioners contend that section 1244(a) is clearly applicable when read in conjunction with sections 1363(b) and 1366(b).[7]

Petitioners argue that respondent's determination is incorrect on the ground that

the explicit meaning of section 1366 and section 1244 allows individuals who are shareholders of an S corporation to deduct as an ordinary loss a

---

[6] See H. Conf. Rept. 2632, 85th Cong., 2d Sess. 43 (1958), 1958-3 C.B. 1188, 1230, which states in pertinent part:

One of the provisions of the Senate amendment, which was also in H.R. 13382 as passed by the House, provides ordinary loss treatment for sales and other dispositions of certain small-business stock. Under H.R. 13382 as passed by the House this treatment was limited to stock issued to an individual and an individual was defined as not including a partnership, trust, or estate. Under the [Senate] amendment, however, this treatment is also available in the case of stock issued to partnerships. The House has accepted this feature of the Senate amendment. * * *

[7] We note with approval the quality of the well-written briefs submitted by both parties in this case.

portion of their pro rata share of the loss their S corporation realizes or incurs on section 1244 stock which was issued to such corporation. * * *

With exceptions not applicable here, section 1363(b) provides in pertinent part:

SEC. 1363(b). COMPUTATION OF CORPORATION'S TAXABLE INCOME.—The taxable income of an S corporation shall be computed in the same manner as in the case of an individual, * * *

Section 1366 in turn provides in pertinent part:

SEC. 1366(a). DETERMINATION OF SHAREHOLDER'S TAX LIABILITY.—
  (1) IN GENERAL.—In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends * * *, there shall be taken into account the shareholder's pro rata share of the corporation's—
    (A) items of income * * *, loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, * * *

        *    *    *    *    *    *    *

(b) CHARACTER PASSED THRU.—The character of any item included in a shareholder's pro rata share under paragraph (1) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation.

Petitioners make several arguments respecting section 1366(b). First, petitioners focus on the language in section 1366(b) that requires the character of an item to be determined as if realized by the shareholder directly from the source from which it was realized by the S corporation. In petitioners' view, this language allows for the shareholder/taxpayer to be deemed to have entered into the same transaction as the S corporation for purposes of determining the character of the loss under section 1366(b). Based on this analysis, petitioners conclude that they are entitled to report the loss as an ordinary loss under section 1244(a).

Next, petitioners contend that their interpretation of the interaction between sections 1366(b) and 1244(a) is consistent with the legislative history of section 1366. Petitioners contend that the legislative history demonstrates that Congress intended for the character of items passing through to S corporation shareholders to be determined under the same rules applicable to partnerships. Petitioners reason that because partnerships pass ordinary losses through to their

partners under section 1244(a), Congress intended for shareholders of S corporations to receive the same treatment.

Petitioners further contend that section 1363(b), which provides that an S corporation's taxable income is to be computed in the same manner as an individual's, supports their position. Petitioners compare the language of section 1363(b) with the definition of the term "individual" in section 1244(d)(4) and conclude that Congress would have expressly excluded S corporations from the latter definition if it had intended for section 1244 to apply as respondent contends. Petitioners rely on Rev. Rul. 93-36, 1993-19 I.R.B. 4, in support of this argument.

Finally, petitioners argue that their position is fair and is supported by policy considerations. Petitioners assert that as the sole shareholders of International, they "were the true (and only) 'taxpayers' with respect to any income or loss from International's purchase and sale of the section 1244 stock." As noted by this Court in *Nelson v. Commissioner*, 30 T.C. 1151, 1154 (1958):

> Exemptions as well as deductions are matters of legislative grace, and a taxpayer seeking either must show that he comes squarely within the terms of the law conferring the benefit sought. * * *

A brief review of section 1366(b) and its legislative history reveals that petitioners' reliance on that provision is misplaced.

The language used in section 1366(b) is identical in all material respects to that used in section 702(b), which provides the rules for determining the character of items passing through a partnership to its partners. It is well settled that section 702(b) reflects a "conduit" approach whereby the character of an item of income, gain, loss, deduction, or credit is determined at the entity or partnership level before the item is passed through to the partners. In *Podell v. Commissioner*, 55 T.C. 429, 432-433 (1970), we explained the conduit rule as follows:

> In essence, the "conduit rule" requires that for the purpose of determining the nature of an item of income, gain, loss, deduction, or credit in the hands of the partnership before distribution or a partner * * * after distribution, the partnership is to be viewed as an entity and such items are to be characterized from the viewpoint of the partnership rather than from the viewpoint of an individual partner. * * *

See *Harder v. Commissioner,* T.C. Memo. 1990-371.

Section 1366(b) was added to the law under the Subchapter S Revision Act of 1982, Pub. L. 97-354, sec. 2, 96 Stat. 1669, 1677, in an effort to simplify the tax rules relating to the operation of subchapter S corporations. The portion of the legislative history explaining section 1366 states in pertinent part:

*In general*
  The bill sets forth new rules for the taxation of income earned by, and the allowance of losses incurred by, subchapter S corporations. These rules generally follow the present law rules governing the taxation of partners with respect to items of partnership income and loss.

              \*    \*    \*    \*    \*    \*    \*

*Passthrough of items*
  The following examples illustrate the operation of the bill's passthrough rules:
  a. *Capital gains and losses.*—Gains or losses from sales or exchanges of capital assets will pass through to the shareholders as capital gains or losses. Net capital gains will no longer be offset by ordinary losses at the corporate level.

              \*    \*    \*    \*    \*    \*    \*

*Shareholder's treatment of items*

              \*    \*    \*    \*    \*    \*    \*

  A "conduit" rule for determining the character of items realized by the corporation and included in the shareholder's pro rata share will be the same as the partnership rule (sec. 702(b)). Under the partnership rules, this has generally resulted in an entity level characterization. \* \* \*
  [S. Rept. 97-640, at 15-17 (1982), 1982-2 C.B. 718, 724-725.[8]]

In sum, the legislative history of section 1366(b) indicates that Congress intended to place S corporations on more equal footing with partnerships and to permit S corporations to operate largely as a conduit for passing items of income, gain, loss, deduction, and credit through to their shareholders. Bittker & Eustice, Federal Income Taxation of Corpora-

---

[8] Consistent with the preceding material, the summary portion of S. Rept. 97-640, at 2 (1982), 1982-2 C.B. 718, 718-719, states in pertinent part:

*Passthrough of income, etc.*

  The bill provides that the character of items of income, deduction, loss, and credits of the corporation will pass through to the shareholders in the same general manner as the character of such items of a partnership passes through to partners. Thus, for example, such items as tax-exempt interest, capital gains and losses, percentage depletion, the source or allocation of foreign income or loss, and foreign income taxes will pass through and retain their character in the hands of shareholders.

tions and Shareholders, par. 6.06, at 6-14 to 6-15 (5th ed. 1987).

With the foregoing as background, it is evident that petitioners' understanding of the interaction between sections 1366(b) and 1244(a) is incorrect. Petitioners read section 1366(b) as requiring an S corporation shareholder to step into the shoes of the corporation for purposes of determining the character of a loss incurred on a sale of section 1244 stock. To the contrary, however, section 1366(a) and (b) requires the character of the loss to be determined from the viewpoint of the S corporation rather than from the viewpoint of its individual shareholders. *Podell v. Commissioner, supra.* As previously discussed, an S corporation does not qualify for ordinary loss treatment under section 1244(a). Consequently, it follows that the loss incurred by International in this case is not properly characterized as an ordinary loss, but rather is a capital loss.

We likewise reject petitioners' argument that the legislative history of section 1366(b) supports their position. While the legislative history indicates that Congress intended for the income tax to generally apply to S corporations in the same manner as it applies to partnerships, there is no indication that Congress intended to amend section 1244(a) to extend relief to S corporations as petitioners' position would suggest.[9] Absent such evidence, we are required to apply the provision as we find it. *United States v. American Trucking Associations,* 310 U.S. 534, 543-544 (1940).

For the same general reasons, we cannot agree with petitioners that section 1363(b) helps their cause.[10] While the latter provision provides that the taxable income of an S corporation is to be computed in the same manner as an individual, an S corporation is not included within the definition of the term "individual" set forth in section 1244(d)(4). See sec. 1.1244(a)-1(b)(2), Income Tax Regs. It is worth noting here that Congress did take steps in an analogous situation to

---

[9] It is unclear whether Congress' failure to address sec. 1244(a) in this regard was by design or oversight. We agree with petitioners that it would have been logical for Congress to extend sec. 1244(a) treatment to S corporations when it revised subch. S in 1982.

[10] Petitioners' reliance on Rev. Rul. 93-36, 1993-19 I.R.B. 4, is misplaced. Absent special circumstances, revenue rulings merely represent respondent's position with respect to a specific factual situation, see *Haley Bros. Constr. v. Commissioner,* 87 T.C. 498, 517 n.21 (1986), and are not treated as precedent in this Court; *Gordon v. Commissioner,* 88 T.C. 630, 635 (1987). Consequently, we express no opinion regarding the revenue ruling.

address the income tax implications arising from an S corporation's holding corporate stock. In particular, section 1371(a)(2) provides that for purposes of subchapter C, an S corporation shall be treated as an individual in its capacity as a shareholder of another corporation. The effect of this provision, consistent with the use of an S corporation as a conduit, is to deny an S corporation a dividends received deduction under section 243. S. Rept. 97-640, at 15 (1982), 1982-2 C.B. 718, 724. The fact that Congress enacted a targeted provision like section 1371(a)(2) suggests that Congress also knew how to extend section 1244(a) relief to S corporations if it desired to do so.

Finally, we find irrelevant petitioners' contention that fairness and policy considerations mandate that they should be allowed ordinary loss treatment under the circumstances. Petitioners assert that for all practical purposes they are the sole taxpayers involved in the disputed transaction. In this regard, it would appear that petitioners would have us either disregard the separate entity status of International or treat the transaction as if petitioners purchased and sold the stock in question themselves. This we cannot do. Consistent with *Moline Properties v. Commissioner,* 319 U.S. 436, 438-439 (1943), a corporation must be respected as a separate entity for purposes of taxation so long as the corporation is organized to carry on business activities or for other legitimate business reasons. See *Buono v. Commissioner,* 74 T.C. 187, 197, 207 (1980). Moreover, it is well established that we are required to confine our analysis of petitioners' tax liability to the specific facts presented, not to what petitioners might otherwise have done. *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148-149 (1974); *Estate of Durkin v. Commissioner,* 99 T.C. 561, 571 (1992).

While we empathize with petitioners, the law simply does not provide the relief they seek. If a remedy is to be had at

all, it must be obtained through legislative change.

To reflect the foregoing,

*Decisions will be entered for respondent.*