WESTERN WASTE INDUSTRIES AND SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12169–92.      Filed April 13, 1995.

*Norman B. Barker,* for petitioners.
*Miles D. Friedman,* for respondent.

OPINION

HAMBLEN, *Chief Judge:* By statutory notice of deficiency dated March 6, 1992, respondent determined a deficiency in petitioners' Federal corporate income tax for the taxable year ending June 30, 1988, in the amount of $150,123. Pursuant to the provisions of section 48.4041–7, Manufacturers & Retailers Excise Tax Regs., respondent contends that petitioners are not entitled to an income tax credit under section 34 in respect of excise tax imposed by section 4041(a)(1) on fuel used by petitioners' vehicles that have a single motor and a power takeoff unit to power the vehicles' internal hydraulic system and that are operated both on and off the nation's highways. See *infra* p. 478 and note 3. Petitioners assert that they are entitled to a fuel credit for the fuel consumed by their diesel-powered highway vehicles, which are registered for highway use in the States where they operate, and that section 48.4041–7, Manufacturers & Retailers Excise Tax Regs., is an invalid interpretative regulation that improperly imposes restrictions and limitations on petitioners' right to claim a fuel credit for the nonpropulsion operations of their vehicles.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and attached exhibits are incorporated by this reference and are found accordingly. Petitioners are a consolidated group. Western Waste Industries, the parent corporation, was incorporated and has its headquarters in California. Petitioners constitute a leading integrated solid waste management company providing collection, recycling, composting, and disposal services. Western Waste Industries owns all the stock of two subsidiaries, Western Waste Industries of Texas and Western Waste Industries of Florida, which are located in Texas and Florida, respectively.

Petitioners operate various trucks in their refuse collection business. Some of these trucks operate completely off the nation's highways (off-road vehicles), while other trucks operate both on and off the nation's highways (on-road vehicles). Substantially all of petitioners' on-road vehicles are powered by diesel fuel; however, petitioners employ a few gasoline-powered vehicles in limited access areas.[1] The parties have agreed that this Court's determinations as to diesel-powered vehicles shall be deemed applicable to both the diesel- and gasoline-powered vehicles.

Petitioners claimed a credit for Federal tax paid on gasoline and special fuels in the amount of $225,350 for its taxable year ending June 30, 1988. Respondent disallowed the fuel credit claimed by petitioners; instead, respondent allowed a deduction of $220,863 for additional fuel expenses. As a result of these adjustments, respondent further determined that the environmental tax credit claimed on petitioners' return had to be reduced by $133. Respondent now concedes that petitioners are entitled to fuel credits claimed by petitioners' landfill group in the amount of $4,487 for diesel fuel consumed by off-road vehicles at a landfill site. Respondent also concedes that the fuel consumed by petitioners' off-road vehicles is not subject to tax, and, accordingly, that petitioners are entitled to a credit of $5,921, which constitutes the tax attributable to such vehicles. The remaining

---

[1] On Form 4136, petitioners claimed a $220,863 credit for Federal tax paid on 1,419,937 gallons of diesel fuel (94.2 percent) and 87,471 gallons of gasoline (5.8 percent).

amount to the credit, $214,942 ($225,350 − $4,487 − $5,921), is in dispute.[2]

All of the on-road vehicles in question were registered for highway use in the States in which they operate. Petitioners' on-road vehicles were powered by a single motor from fuel that was stored in a single tank. The parties dispute whether petitioners are entitled to claim a credit for the gasoline and/or diesel fuel used by these on-road vehicles, which are equipped with one motor, when their so-called power takeoff units are in operation. These power takeoff units, which are powered by the vehicle motor, activate the vehicle's hydraulic system, which performs refuse industry tasks, including, but not limited to the following: Raising and emptying containers, and compacting and ejecting refuse. An on-road vehicle may only be driven minimally while its power takeoff unit is engaged. The parties have stipulated that since the early 1970's, manufacturers of vehicles have stopped producing standard vehicles that contain a separate motor to power the vehicles' special equipment.

Petitioners allege that section 48.4041–7, Manufacturers & Retailers Excise Tax Regs. (the regulation), is an interpretative regulation that is invalid as it improperly imposes additional requirements on the incidence of taxation of diesel fuel. Specifically, petitioners contend that the regulation is invalid because: (1) Congress intended section 4041(a)(1) to tax only diesel fuel used "for the propulsion of" a registered highway vehicle; (2) section 4041 and its legislative history do not mention the regulation's bright-line distinction between single-motor and dual-motor vehicles; (3) the Commissioner has vacillated in interpreting section 4041(a)(1); certain amendments to the regulation, which were not accompanied by corresponding changes in the underlying statute, demonstrate the Commissioner's attempts to administratively rewrite section 4041; (4) the regulation is an interpretative regulation which is inconsistent with section 4041; (5) the amendment by section 202(b) of the Airport and Airway Revenue Act of 1970, Pub. L. 91–

---

[2] For purpose of this proceeding only, and without prejudice to petitioners' right to contend otherwise in any other or subsequent proceedings, petitioners concede that the fuel consumed for purposes of propelling the on-road vehicles while off the nation's highways is subject to tax, amounting to $39,000. The parties have stipulated that during the year in issue, 22 percent of the fuel utilized by petitioners' on-road vehicles was used to run the power takeoff units.

258, 84 Stat. 238, was not intended to make a substantive change in section 4041; and (6) some States allow petitioners to claim a credit for the portion of the fuel used to power the power takeoff units of single-motor vehicles.

Respondent contends that the regulation constitutes a valid and reasonable interpretation of section 4041. Specifically, respondent asserts that the regulation is valid because: (1) Section 4041(a)(1) imposes an excise tax on diesel fuel sold to an operator of a diesel-powered highway vehicle "for use as a fuel in such vehicle"; (2) a credit is allowed for the tax imposed by section 4041 on diesel fuel that is put to an "off-highway business use", as defined in section 6421(e)(2)(A); (3) under section 6421(e)(2)(A), the use of fuel in a highway vehicle that is registered (or required to be registered) for highway use under the laws of any State does not constitute "off-highway business use"; (4) the regulation, which was originally promulgated 34 years ago, harmonizes with the plain language, origin, and purpose of section 4041(a)(1) and related sections of the Code; and (5) whether or not a State allows relief from tax on fuel is irrelevant with respect to the validity of the regulation.

We agree with respondent. For the reasons stated below, we hold that section 48.4041–7, Manufacturers & Retailers Excise Tax Regs., constitutes a valid exercise of the Secretary's regulatory authority.

## Discussion

Treasury regulations are not to be rejected unless they are unreasonable and plainly inconsistent with the revenue statutes. *Bingler v. Johnson,* 394 U.S. 741, 750–751 (1969); *Cramer v. Commissioner,* 101 T.C. 225, 247 (1993). Treasury regulations are entitled to considerable weight; however, the Secretary may not usurp the authority of Congress by adding restrictions to a statute which are not there. *United States v. Marett,* 325 F.2d 28 (5th Cir. 1963); *Jackson Family Found. v. Commissioner,* 97 T.C. 534 (1991), affd. 15 F.3d 917 (9th Cir. 1994); *Stephenson Trust v. Commissioner,* 81 T.C. 283, 288 (1983); *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. 252, 256–257 (1983); *Estate of Boeshore v. Commissioner,* 78 T.C. 523, 527 (1982); see *Washington v. Commissioner,* 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C.

Cir. 1982). Petitioners bear the burden of proving that respondent's determinations set forth in the notice of deficiency are incorrect. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111, 115 (1933).

In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. *United States v. Vogel Fertilizer Co.,* 455 U.S. 16 (1982); *Durbin Paper Stock Co. v. Commissioner, supra* at 257. We note at the outset that the Secretary does not enjoy a specific grant of authority to promulgate regulations under section 4041. Accordingly, the regulation in question is an interpretative regulation promulgated by the Secretary pursuant to the general grant of authority provided in section 7805(a). Interpretative regulations, although entitled to respect, are entitled to less judicial deference than that given to legislative regulations promulgated pursuant to a specific grant of authority. *United States v. Vogel Fertilizer Co., supra* at 24; *Phillips Petroleum Co. v. Commissioner,* 97 T.C. 30, 34 (1991). As the Supreme Court has explained: "Because Congress has delegated to the Commissioner the power to promulgate 'all needful rules and regulations for the enforcement of [the Internal Revenue Code],' 26 U.S.C. § 7805(a), we must defer to his regulatory interpretations of the [Internal Revenue] Code so long as they are reasonable". *Cottage Sav. Association v. Commissioner,* 499 U.S. 554, 560–561 (1991) (quoting *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 476–477 (1979)); *Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169 (1981) ("Treasury Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes'").

In *National Muffler Dealers Association, Inc. v. United States, supra* at 477, the Supreme Court stated that, in assessing the validity of regulations, courts should consider factors such as whether the regulation was issued contemporaneously with the statute, the manner in which the regulation evolved, "the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent reenactments of the statute."

The Supreme Court has defined the task of determining the validity of a Federal regulation as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. [*Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842–843 (1984); fn. refs. omitted.]

Consistent with the foregoing, we examine the historical development of section 4041 and determine whether the regulation implements the congressional mandate in a reasonable manner. This case involves an issue of first impression.

Section 4041(a)(1) imposes a tax on diesel fuel:

> (A) sold by any person to an owner, lessee, or other operator of a diesel-powered highway vehicle for use as a fuel in such vehicle, or
> (B) used by any person as a fuel in a diesel-powered highway vehicle unless there was a taxable sale of such liquid under subparagraph (A).

The tax is not imposed under section 4041 when diesel fuel is sold for use or used in an off-highway business use, as defined in section 6421(e)(2). Sec. 4041(b)(1)(A), (C). If a tax has been imposed under section 4041 on a sale of diesel fuel, and the fuel is used by the purchaser for a nontaxable purpose, e.g., for off-highway business use, section 34 allows the purchaser a credit against income tax for the section 4041 tax imposed on the sale.[3]

Section 6421(e)(2)(A) defines the term "off-highway business use" to mean:

> any use by a person in a trade or business of such person * * * *otherwise than as a fuel in a highway vehicle*—

---

[3] The credit equals the amount of sec. 4041 tax that would otherwise be refundable (payable) to a taxpayer under sec. 6427 with respect to fuel used for nontaxable purposes during the year. Secs. 34(a)(3), 6427(k); sec. 48.6427–1(b), Manufacturers & Retailers Excise Tax Regs.

(i) which (at the time of such use) is registered, or is required to be registered, for highway use under the laws of any State * * * [Emphasis added.]

Petitioners' on-road vehicles are diesel-powered highway vehicles that are registered for highway use in the States where they operate. The words of a statute should be interpreted "in their ordinary, everyday senses." *Crane v. Commissioner,* 331 U.S. 1, 6 (1947). Under the plain language of the statutory provisions applicable here, the phrase "off-highway business use" does not encompass diesel fuel used as a fuel in petitioners' on-road vehicles.

Petitioners contend that as stated in section 4041(a)(1) the phrase "used * * * as a fuel in" should be interpreted to mean "used * * * as a fuel for the propulsion of". Accordingly, petitioners assert that the regulation is invalid as it improperly imposes a tax on the fuel used for the nonpropulsion operations of a registered highway vehicle. The regulation provides:

§ 48.4041–7 Dual use of taxable liquid fuel.—Tax applies to all taxable liquid fuel sold for use or used as a fuel in the motor which is used to propel a diesel-powered vehicle or in the motor used to propel a motor vehicle, motorboat, or aircraft, even though the motor is also used for a purpose other than the propulsion of the vehicle, motorboat, or aircraft. Thus, if the motor of a diesel-powered highway vehicle or a motorboat operates special equipment by means of a power take-off or power transfer, tax applies to all taxable liquid fuel sold for this use or so used, whether or not the special equipment is mounted on the vehicle or boat. For example, tax applies to diesel fuel sold to operate the mixing unit on a concrete mixer truck if the mixing unit is operated by means of a power take-off from the motor of the vehicle. Similarly, tax applies to all taxable liquid fuel sold for use or used in a motor propelling a fuel oil truck even though the same motor is used to operate the pump (whether or not mounted on the truck) for discharging the fuel into customers' storage tanks. However, tax does not apply to liquid fuel sold for use or used in a separate motor to operate special equipment (whether or not the equipment is mounted on the vehicle). If the taxable liquid fuel used in a separate motor is drawn from the same tank as the one which supplies fuel for the propulsion of the vehicle, a reasonable determination of the quantity of taxable liquid fuel used in such separate motor or during such period is acceptable for purposes of application of the tax. This determination must be based, however, on the operating experience of the person using the taxable liquid fuel, and the taxpayer must maintain records which support the allocation used. Devices to measure the number of miles the vehicle has traveled, such as hubometers, may be used in making a preliminary determination of the number of gallons of fuel used to propel the vehicle. In order to make a

final determination of the number of gallons of fuel used to propel the vehicle, there must be added to this preliminary determination the amount of fuel consumed while idling or warming up the motor preparatory to propelling the vehicle.

Petitioners' assertions that this regulation is invalid rest on the premise that, historically, Congress has only taxed diesel fuel used "for the propulsion of" a diesel-powered highway vehicle. However, petitioners confuse the tax on special motor fuels with the tax on diesel fuel and fail to recognize that since 1951 Congress has taxed all diesel fuel used "in" diesel-powered highway vehicles. Sec. 4041(a)(1).

In 1951, Congress first taxed diesel fuel by enacting section 2450 of the Internal Revenue Code of 1939. Revenue Act of 1951, ch. 521, sec. 441(a), 65 Stat. 452, 523. This diesel fuel excise tax was applied at the retail level if the fuel was sold for use as a fuel "in" a diesel-powered highway vehicle; thus, diesel fuel used in equipment designed primarily for off-highway use, such as bulldozers, power shovels, etc., was exempt from tax. Revenue Act of 1951 section 441(a) provided:

Tax On Diesel Fuel

There is hereby imposed a tax of 2 cents a gallon upon any liquid (other than any product taxable under section 3412)—

(1) sold by any person to an owner, lessee, or other operator of a diesel-powered highway vehicle, for use as a fuel in such vehicle, or

(2) used by any person as a fuel in a diesel-powered highway vehicle unless there was a taxable sale of such liquid under clause (1).

Section 441(a) of the Revenue Act of 1951 is essentially the same as section 4041(a)(1), except for the rate of tax. The pertinent phrase "for use as a fuel in such vehicle" has remained the same since the enactment of the statute taxing diesel fuel in 1951. Neither section 4041(a)(1) nor any of its predecessors has used the phrase "for the propulsion of" in describing the incidence of taxation of diesel fuel. The phrase "for the propulsion of" was used until 1970 in the Code to describe the tax on special motor fuels rather than to describe the tax on diesel fuel. See sec. 4041(a)(2), prior to amendment by Airport and Airway Revenue Act of 1970, Pub. L. 91–258, sec. 202(b), 84 Stat. 238. None of petitioners' on-road vehicles used special motor fuels; accordingly, they were not taxed under section 4041(a)(2) during the year in

issue. Rather, petitioners' on-road vehicles used diesel fuel and were taxed under section 4041(a)(1) during the year ended June 30, 1988.

In 1970, the words "for the propulsion of" were deleted from the subsection (then section 4041(b)) taxing special motor fuels by section 202(b) of the Airport and Airway Revenue Act of 1970. This amendment conformed the language taxing special motor fuels with the language taxing diesel fuel and noncommercial aviation fuel.

Petitioners contend that the regulation is invalid insofar as it applies the section 4041 tax to all fuel used in a motor that propels a diesel-powered highway vehicle, even if the motor also operates a power takeoff unit. As we observed, see *supra* p. 479, petitioners' argument is undercut by the plain language of the relevant statutes. We normally give controlling effect to the plain language of the statute unless to do so would produce absurd or futile results. *Rath v. Commissioner,* 101 T.C. 196, 200 (1993) (citing *United States v. American Trucking Associations,* 310 U.S. 534, 543–544 (1940)). As the Supreme Court has stated:

Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but in the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive. Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete. [*Burlington N.R.R. v. Oklahoma Tax Commn.,* 481 U.S. 454, 461 (1987); citations and internal quotation marks omitted.]

Accordingly, when a statute is clear on its face, we require unequivocal evidence of a contrary purpose before construing it in a manner that overrides the plain meaning of the statutory words. *Rath v. Commissioner, supra* at 200–201 (citing *Halpern v. Commissioner,* 96 T.C. 895, 899 (1991); *Huntsberry v. Commissioner,* 83 T.C. 742, 747–748 (1984)).

Petitioners contend that the factors enunciated in *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. at 477, discussed above, demonstrate that the regulation should be set aside. Petitioners contend that the regulation was not issued contemporaneously with the original enactment of the excise tax on diesel fuel in 1951. See Revenue Act of 1951 sec. 441(a). The regulation was originally promulgated 9

years later, in 1960, T.D. 6505, 1960–2 C.B. 283, 290.[4] Petitioners contend that the most contemporaneous interpretation of the statute was an unnumbered 1953 private letter ruling, on which they rely to support their position that diesel fuel consumed by a registered highway vehicle is subject to tax only if the fuel is consumed for the propulsion of the vehicle. This private letter ruling has no precedential value in this case. Sec. 6110(j)(3); see, e.g., *Fowler v. Commissioner,* 98 T.C. 503, 506 n.5 (1992); *Estate of Jalkut v. Commissioner,* 96 T.C. 675, 684 (1991). The question that we must address is the validity of the regulation. Upon reviewing the law in this area, we find that Congress never intended to and never did limit the incidence of taxation of diesel fuel in the manner advocated by petitioners. The fuel used to power the takeoff units on petitioners' on-road vehicles was not put to an "off-highway business use" as defined by sections 4041(a)(1) and 6421(e)(2)(A). In the absence of any evidence or argument that the fuel was put to another nontaxable use, the section 4041 tax applies. Petitioners' attack upon the regulation is unfounded.

It is important to recognize that this regulation was not the first regulation issued concerning the tax consequences of fuel being used both to propel a vehicle and to operate special equipment on that vehicle. Section 48.6421(a)–1(d), Manufacturers & Retailers Excise Tax Regs., T.D. 6433, 1960–1 C.B. 426, 444, relating to the refund of a portion of the tax paid on gasoline on account of nonhighway use of the gasoline, first provided that all the fuel used in the nonpropulsion operations of a gasoline-powered vehicle with a single motor operating both propulsion and nonpropulsion equipment would be subject to tax; however, if the highway vehicle was equipped with a separate motor to operate the special equipment, a refund could be claimed with respect to the gasoline used by the separate motor, regardless of whether the separate motor had a separate fuel tank or shared the vehicle's fuel tank. An analogous provision, in regard to other fuels, including diesel fuel, now appears in section 48.6427–1, Manufacturers & Retailers Excise Tax Regs. The uniform rule with respect to both gasoline and die-

---

[4] When originally promulgated, sec. 48.4041–7, Manufacturers & Retailers Excise Tax Regs., was numbered sec. 48.4041–6, Manufacturers & Retailers Excise Tax Regs.

sel fuel exists for administrative convenience and to avoid possible confusion in the application of the tax.

Petitioners contend that the Secretary has vacillated and has adopted various interpretations of the statute. There is no question that the Secretary has amended the regulation from time to time, in order to administer the taxing provisions of section 4041. However, it is important to understand the reasons these amendments were promulgated.

Petitioners assert that the Secretary abruptly shifted the meaning of this regulation 6 years after it was originally promulgated despite the absence of any significant change in the underlying statutory provisions. In 1966, the Secretary amended what was then section 48.4041–7(c), Manufacturers & Retailers Excise Tax Regs., T.D. 6881, 1966–1 C.B. 247, 248,[5] to exclude from tax fuel consumed in a vehicle on which specialized equipment was mounted if (i) the vehicle was immobilized, (ii) both the "set-up" time and the "breakdown" time related to the equipment were substantial, and (iii) the primary use of the equipment was unrelated to the loading or transporting of cargo. This former regulation was

---

[5] Sec. 48.4041–7(c)(2), Manufacturers & Retailers Excise Tax Regs., as so amended, provided as follows:

(2) *Temporary loss of classification as a motor vehicle.*

(i) A vehicle on which equipment or machinery having a specialized use (as for example specialized oil-field machinery) is mounted and which (except for the provisions of this subparagraph) would be considered a motor vehicle under subparagraph (1) of this paragraph shall not be considered a motor vehicle during a period in which it does not have the essential characteristics of a motor vehicle. Such vehicle will be considered as not having the essential characteristics of a motor vehicle during the period the vehicle is incapable of motion and the equipment or machinery is performing the operation for which it is primarily adapted if—

(a) The primary use of such equipment or machinery is other than in connection with the loading, unloading, handling, preserving, or otherwise caring for any cargo transported on the vehicle,

(b) A "setting-up" process involving the expenditure of a substantial amount of time and effort is necessary to place the vehicle in such an immobilized and operative condition,

(c) After expending the necessary substantial time and effort the vehicle has the essential characteristics of an immobile piece of equipment or machinery designed for a specialized use, and

(d) A "break-down" process involving a substantial amount of time and effort is required to restore the vehicle to a mobile condition.

After the "break-down" process described in (d) of this subdivision is completed and mobility restored, the vehicle shall again be considered a motor vehicle within the meaning of subparagraph (1) of this paragraph. The mere fact that a vehicle is rendered immobile by the switching or pulling of a lever, such as a handbrake or power takeoff (with or without accompanying minor adjustments to the vehicle), in order to perform the operation for which the vehicle is primarily adapted is not sufficient to cause the temporary loss of classification as a motor vehicle since a substantial expenditure of time and effort is not involved and the vehicle has not attained the essential characteristics of an immobile piece of equipment or machinery designed for specialized use.

illustrated by an example, wherein specialized equipment, namely, a derrick-mast, was erected on a vehicle for servicing oil wells, immobilizing the vehicle in the process.

In 1970, the Secretary again amended what was then section 48.4041–7, Manufacturers & Retailers Excise Tax Regs., T.D. 7071, 1970–2 C.B. 257, and simplified the conditions relating to vehicles with the specialized equipment. The 1970 amendments provided that the excise tax would not apply when the motor vehicle became immobilized by reason of the specialized equipment operations, provided the primary use of the specialized equipment was unrelated to the loading or transporting of cargo.

In 1977, section 48.4041–7(c)(2), Manufacturers & Retailers Excise Tax Regs., was deleted. T.D. 7461, 1977–1 C.B. 317, 320. Petitioners do not contend that their vehicles could have satisfied that regulation's requirements. Rather, petitioners contend that the promulgation of these amendments demonstrates a lack of consistency in the Secretary's interpretation of the statute.

The mere fact that the Treasury waited 9 years after the statute was enacted to issue any regulations and then changed its own regulations 6 years after that does not invalidate the regulation. In *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. at 477, the Treasury waited 6 years after the statute was enacted to issue any regulation and then substantially changed its own regulation 10 years after that. *Id.* at 478–482. Nevertheless, the Supreme Court deferred to the regulation. *Id.* at 488–489. Moreover, both *National Muffler* and the present case involve an interpretative regulation issued under the general grant of authority of section 7805(a).

We are not persuaded that the *National Muffler* factors favor petitioners' position here. Although the original regulation was issued 9 years after the enactment of the statute, the regulation has been in place for 34 years. The regulation has consistently provided that all fuel used by any single-motor diesel-powered highway vehicle, which is registered or required to be registered by a State, is taxed, whether or not the motor also operates a power takeoff unit.

Petitioners assert that the regulation distorts congressional will by improperly placing restrictions on the number of engines a vehicle must contain in order to qualify for a diesel

fuel credit. We disagree. If anything, the regulation provides a liberal reading of the language of section 4041. The various amendments to the regulation do not alter our analysis. We see no merit in petitioners' contention that the various amendments to the regulation bear directly on the resolution of the issue presented.

Contrary to petitioners' contentions, the manner in which some States impose a tax on fuel does not persuade us that this regulation constitutes an unreasonable interpretation of section 4041. The excise fuel tax provisions in question are a matter of Federal tax law, and cases interpreting State law or State statutes are not dispositive. *United States v. Mitchell,* 403 U.S. 190, 197 (1971).

Petitioners insist that they should be entitled to a diesel fuel credit for the fuel consumed by their registered highway vehicles that is not used for the propulsion of the vehicle. Petitioners contend that the Secretary's interpretative powers to construe section 4041 cannot justify the Secretary's differentiation between single-motor and dual-motor vehicles. We cannot conclude that the regulation presents an impermissible construction of section 4041. In evaluation of the regulation, we are mindful of the Supreme Court's admonition: "The choice among reasonable interpretations of the Internal Revenue Code is for the Commissioner, not the courts." *Skinner v. Mid-America Pipeline Co.,* 490 U.S. 212, 222 (1989) (quoting *National Muffler Dealers Association, Inc. v. United States, supra* at 488). Provided a regulation is neither unreasonable nor plainly inconsistent with the statute, it should be upheld. *Bingler v. Johnson,* 394 U.S. at 750.

After considering the regulation in light of the language of section 4041(a)(1), and the purpose behind it, we are satisfied that the regulation constitutes a valid exercise of the Secretary's regulatory authority. We disagree with petitioners' contentions that the regulation creates a requirement in addition to those contained in the statute. The regulation is based on the premise that the law should not permit an allocation in the case where fuel is channeled through the same motor as that used to propel the vehicle. While this may not be the only interpretation of the phrase "used * * * as a fuel in a diesel-powered highway vehicle", we find that the regulation, which has stood for nearly 35 years, is based on a permissible construction of section 4041(a)(1) and is

reasonable. Even presuming we might disagree with the Secretary's interpretation of the statute (which we do not), we would not substitute our own construction of the statute for that of the Secretary since the regulation implements the congressional mandate is a reasonable manner. *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. at 842–843.

Each of petitioners' on-road vehicles was a registered, diesel-powered, highway vehicle with a single motor. The fact that the motor was used not only to drive the vehicle, but also to power its hydraulic system, does not entitle petitioners to the tax credit in dispute here. Petitioners may not claim any credit under section 34 for Federal tax paid on gasoline and diesel fuel for the fiscal year ending June 30, 1988, for their on-road vehicles. We have considered all of the other arguments made by petitioners and, to the extent we have not addressed them, find them to be without merit.

To reflect the foregoing and concessions,

*Decision will be entered under Rule 155.*