CHARLES H. AND BARBARA WATERHOUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Waterhouse v. Commissioner
Docket No. 17765-92
United States Tax Court
T.C. Memo 1994-467; 1994 Tax Ct. Memo LEXIS 475; 68 T.C.M. (CCH) 744; September 21, 1994, Filed *475 Decision will be entered for respondent as to the deficiency and for petitioners as to the penalty under sec. 6662, I.R.C.
For petitioners: John J. O'Toole. For respondent: Robert A. Fee. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: Respondent determined a deficiency in petitioners' Federal income tax for the 1989 taxable year in the amount of $ 13,099 and an accuracy-related penalty under section 6662 in the amount of $ 2,620. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the 1989 taxable year, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent now concedes that there is no penalty due from petitioners for the 1989 taxable year. The sole issue for decision is whether petitioners have discharge of indebtedness income for the 1989 taxable year. Background
This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Edison, New Jersey, at the time the petition was filed in this case. References to petitioner are to Charles H. Waterhouse. Petitioner first served on active duty with the U.S. Marine Corps (hereinafter Marine Corps) beginning on *476 August 24, 1943. Petitioner sustained serious injuries in the invasion of Iwo Jima during World War II. On May 23, 1946, petitioner was discharged from the Marine Corps. On June 13, 1946, petitioner was awarded compensation by the Veterans' Administration (now Department of Veterans' Affairs) for his service-connected disability. In December 1947, petitioner's service-connected disability rating was revised upward. Thereafter, petitioner attended art school under the GI Bill and became a successful free-lance illustrator. Petitioner was employed as an official combat artist for the armed services from 1966 to 1971. During May 1972, the Marine Corps contacted petitioner for the purpose of having him paint an illustrated history of the Marine Corps during the Revolutionary War for display in the upcoming 1976 bicentennial celebration. The Marine Corps lacked the funding to directly purchase petitioner's paintings and art objects that would be developed during the course of this project. In lieu of retaining petitioner's artistic services on an independent contractor basis, the Marine Corps suggested that petitioner be commissioned into the Marine Corps Reserve. Petitioner agreed. *477 On October 11, 1972, petitioner was commissioned a major in the Marine Corps Reserve and was ordered to active duty under the Marine Corps category IV program as an "artist-in-residence" specialist officer. [1]
Petitioner served on active duty with the Marine Corps under its category IV program from January 8, 1973, until his honorary retirement on September 22, 1986. He was recalled to active duty under the category IV program on November 12, 1986, and he retired again on February 12, 1991. From January 1973 until September 1985, petitioner received $ 52,816.33 in disability benefits from the Veterans' Administration *478 in addition to his compensation as an officer in the Marine Corps. Petitioner did not include his disability benefits in gross income pursuant to section 104(a)(4). In December 1985, the Veterans' Administration notified petitioner that his disability payments were being terminated in accordance with 38 U.S.C. sec. 3104(c), [2] which prohibits a veteran of the armed services from receiving benefits from the Veterans' Administration while such veteran receives active service pay. Petitioner was further informed that he was liable for repayment of the benefits that he had received from the date of his commissioning in the Marine Corps Reserve. Thereafter, petitioner applied for a waiver of repayment of the allegedly overpaid disability amounts. Petitioner's grounds for the waiver included the following: *479 (1) He was not on active duty with the Marine Corps, (2) there was no debt owed, and (3) hardship. In March 1986, petitioner's initial application was denied on the ground that he had not demonstrated hardship. On July 4, 1986, petitioner appealed this decision to the Board of Veterans' Appeals. During the time between July 4, 1986, and January 9, 1989, petitioner's case was remanded several times by the Board of Veterans' Appeals to the Veterans' Administration for a factual determination as to whether petitioner satisfied the Veterans' Administration minimum financial hardship guidelines for the possible granting of petitioner's waiver request. On July 14, 1986, petitioner submitted a revised financial statement to the Veterans' Administration. On August 18, 1986, petitioner's claim for a waiver of the overpayment determination on the grounds of hardship was rejected again by the Veterans' Administration. Petitioner appealed. On May 1, 1987, the Board of Veterans' Appeals conducted a hearing in the case, and on June 11, 1987, the case was remanded to the Veterans' Administration for further development of the facts. On January 9, 1989, the Veterans' Administration Regional *480 Office Committee on Waivers and Compromises granted petitioner a waiver of any repayment obligation under 38 U.S.C. sec. 3104(c). The Veterans' Administration January 9, 1989, decision failed to address the question of whether petitioner had incurred a valid debt to repay the waived disability benefits received by him during his Marine Corps tenure as the Board of Veterans' Appeals decision required. On February 16, 1989, the Veterans' Administration issued a supplemental statement of the case which determined that petitioner was on active duty with the Marine Corps and was indebted to the Veterans' Administration for the repayment of the disputed disability benefit payments under 38 U.S.C. sec. 3104(c). On February 28, 1989, the Veterans' Administration mailed petitioner a letter informing him that his request for a waiver of repayment had been approved by its Committee on Waivers and Compromises. The letter further informed petitioner that the Veterans' Administration would be reporting the discharge of indebtedness to the Department of the Treasury as a taxable transaction. Shortly thereafter, petitioner *481 appealed the Veterans' Administration indebtedness decision dated February 16, 1989. Petitioner argued that he was not legally indebted to the Government for any overpayment of disability benefits. On March 28, 1991, the Board of Veterans' Appeals affirmed the Veterans' Administration decision concluding that petitioner was legally indebted to the Government for an overpayment to him of Veterans' Administration disability compensation benefits pursuant to 38 U.S.C. sec. 3104(c). Petitioner appealed the March 28, 1991, Board of Veterans' Appeals determination on the indebtedness issue. The U.S. Court of Veterans' Appeals dismissed petitioner's appeal for lack of jurisdiction on November 16, 1992. Petitioners contend that (1) The waiver that canceled petitioner's alleged indebtedness did not become effective until 1992; and (2) the Veterans' Administration waiver of repayment due to financial hardship was a gratuitous nontaxable discharge of indebtedness. Respondent contends that petitioners are required to report discharge of indebtedness income in the 1989 taxable year, due to the Government's nongratuitous discharge of a valid debt. We *482 agree with respondent. Discussion
Section 61(a) broadly defines gross income as "all income from whatever source derived". Section 61(a)(12) further elaborates on this broad language by providing that gross income specifically includes amounts received from the discharge of indebtedness. A taxpayer may realize discharge of indebtedness income by paying an obligation at less than its face value. United States v. Kirby Lumber Co., 284 U.S. 1 (1931). The underlying rationale of this principle is that a reduction in debt without a corresponding reduction in assets causes an economic gain and income to the debtor because assets are no longer encumbered. A cancellation of indebtedness generally produces income to the debtor in an amount equal to the difference between the amount due on the obligation and the amount paid for the discharge. If no consideration is paid for the discharge, then the entire amount of the debt is usually considered the amount of income which the debtor must include in income. Sec. 61(a)(12); Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673. *483 The elements necessary for the existence of discharge of indebtedness income under section 61(a)(12) are that: (1) A taxpayer liability exists at the time of the alleged discharge; and (2) the taxpayer was in fact discharged from such liability. A debt is considered canceled or discharged at the time when an identifiable event occurs that makes it clear that the debt will never be repaid. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). The test for determining when the necessary identifiable event occurred is a practical assessment of all the facts and circumstances surrounding the likelihood of repayment of the debt. Id. Petitioner bears the burden of proving that there was no valid debt, a discharge of debt did not occur, and the year of the discharge determined by respondent is erroneous. Rule 142(a); see, e.g., Carlins v. Commissioner, T.C. Memo. 1988-79. Petitioner contends that there was no identifying event that would give rise to discharge of indebtedness income during the 1989 taxable year. Specifically, petitioner asserts that no debt was established for certainty until November 16, 1992, the date *484 the U.S. Court of Veterans' Appeals dismissed petitioner's appeal for lack of jurisdiction. We disagree. The identifiable event which established petitioner's discharge from his 38 U.S.C. sec. 3104(c) obligation to repay the total amount of excess Veterans' Administration disability payments was made manifest on January 9, 1989, when the Veterans' Administration Regional Office Committee on Waivers and Compromises specifically granted petitioner a waiver of any repayment obligation concerning the disputed Veterans' Administration benefit amount. Although the Board of Veterans' Appeals decision dated March 28, 1991, listed December 22, 1988, rather than January 9, 1989, as the date of the granting of the waiver, any ambiguity regarding the exact date of the Veterans' Administration decision granting petitioner's waiver is resolved by observing the Veterans' Administration decision itself, which, as before stated, is dated January 9, 1989. Consequently, it is clear that the discharge occurred on January 9, 1989, and the only question is whether there was a valid debt to be discharged. We answer this by reference to the decision of the Veterans' *485 Administration which decided that there was a valid debt. Petitioner contends that 1992, not 1989, is the appropriate year for the alleged discharge of indebtedness income because it was not until November 16, 1992, that there was an ultimate decision from the U.S. Court of Veterans' Appeals. Petitioner has failed to prove that respondent's selection of the taxable year 1989 as the year of the discharge is unreasonable and incorrect since on February 16, 1989, the Veterans' Administration determined that petitioner was validly indebted pursuant to 38 U.S.C. sec. 3104(c). Based upon the January 9 and February 16, 1989, Veterans' Administration decisions, we find that petitioner was discharged from a debt owed to the Veterans' Administration. In this case, after the Veterans' Administration granted petitioner's waiver of repayment on January 9, 1989, the funds were unconditionally available to petitioner, and there was no probability of repayment. It does not matter that petitioner's appeal in the first action might have been successful in a later year. See North American Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932); *486 Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931). Petitioner must include the discharge of indebtedness income in gross income in 1989 under the claim of right doctrine, unless his situation qualifies for an exception. See North American Oil Consol. v. Burnet, supra at 424. Moreover, since the Veterans' Administration held that petitioner was validly indebted on February 16, 1989, respondent's selection of the taxable year 1989 as the year of discharge is reasonable and correct as above noted, and unless petitioner's situation qualifies for an exception, petitioner must recognize discharge of indebtedness income for the 1989 taxable year. Petitioner contends, in the alternative, that even if there was a valid debt that was discharged in 1989, he does not have to recognize discharge of indebtedness income because the discharge was gratuitous. The general rule of discharge of indebtedness income is subject to certain judicial and statutory exceptions. In Helvering v. American Dental Co., 318 U.S. 322 (1943), the Supreme Court applied a gift exception in the case of a corporate debtor *487 whose accrued obligation for back rent and interest had been canceled by its creditors. The Court explained that since the "forgiveness was gratuitous, a release of something to the debtor for nothing, * * * [it was] sufficient to make the cancellation here gifts within the statute." Id. at 331. However, in Commissioner v. Jacobson, 336 U.S. 28 (1949), the Supreme Court expressly abandoned the view that a release of "something for nothing" necessarily implied a gift, and instead adopted a "motive" test under which the presence or absence of donative intent on the party of the creditor becomes dispositive. In this case, in keeping with the foregoing guidelines of the Supreme Court, we find that the discharge of petitioner's indebtedness was not a gift. The Veterans' Administration did not act towards petitioner with a detached and disinterested generosity arising from affection, respect, admiration, charity or like impulses. See Commissioner v. Duberstein, 363 U.S. 278 (1960). The Veterans' Administration repeatedly denied petitioner's requests for a waiver of repayment before it ultimately *488 granted petitioner's request on January 9, 1989. Further insight into the Veterans' Administration's motivation is provided by a letter dated February 28, 1989, in which the Veterans' Administration informed petitioner that it was reporting the discharge of indebtedness to the Department of the Treasury as a taxable transaction. The Veterans' Administration January 9, 1989, waiver of petitioner's $ 52,816.33 repayment obligation due to financial hardship must be viewed as a formal business decision by the agency that it should write off what it felt was an uncollectible overpayment of excess disability benefits, and that spending additional agency resources trying to collect this debt would be futile. Petitioner has simply failed to prove that the Veterans' Administration discharge was gratuitous. Moreover, the statutory relief provisions from discharge of indebtedness income contained in section 108 do not apply to petitioner. Section 108(a)(1) provides: SEC. 108. (a) Exclusion From Gross Income. -- (1) In General. -- Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) *489 of indebtedness of the taxpayer if -- (A) the discharge occurs in a title 11 case, or (B) the discharge occurs when the taxpayer is insolvent, or (C) the indebtedness discharged is qualified farm indebtedness.
The term "indebtedness of the taxpayer" for purposes of section 108 includes any indebtedness for which a taxpayer may be liable. Sec. 108(d)(1)(A). Petitioner's obligation to repay the excess disability benefits constitutes an "indebtedness" which falls within the scope of section 108(a) if one of the specific conditions of section 108(a)(1) is present. However, none of the qualifying events of section 108(a)(1) exists in this case that would allow the exclusion of petitioner's $ 52,816.33 discharge of indebtedness from gross income under section 61(a)(12). As noted above, a taxpayer can qualify for the section 108(a) income exclusion only if the discharge occurs in a title 11 bankruptcy proceeding, if he is insolvent, or if the indebtedness constitutes qualified farm indebtedness. The evidence shows that petitioner's $ 52,816.33 indebtedness was discharged on January 9, 1989, and not during the course of a title 11 bankruptcy proceeding, as would be required *490 by section 108(a)(1)(A). Further, there is no evidence in the record that would demonstrate that petitioner was insolvent as of January 9, 1989, the date of the Veterans' Administration discharge of petitioner's indebtedness. Therefore, the insolvency exception of section 108(a)(1)(B) is not applicable. Finally, the section 108(a)(1)(C) exception for qualified farm indebtedness, as defined in section 108(g)(2), is not met since petitioner's discharge of indebtedness consisted of excess disability benefits rather than qualified farm indebtedness. Because none of the exceptions provided in section 108(a)(1) is applicable to petitioner, the $ 52,816.33 discharge of indebtedness must still be included in his gross income under the general rule in section 61(a)(12). Furthermore, section 102(a), [3] which excludes from the definition of gross income any amount received as a gift or bequest, cannot come to petitioner's aid, as we have previously found that no donative intent existed on the part of the Veterans' Administration. In this respect there was an obvious lack of detached or disinterested generosity, as we previously pointed out. See Commissioner v. Duberstein, supra. *491 Further, section 102(c) provides the following exception to the general section 102(a) exclusionary rule for gifts from employers to employees: SEC. 102. (c) Employee gifts. -- (1) In General. -- Subsection (a) shall not exclude from gross income any amount transferred by or for an employer to, or for the benefit of, an employee.
Section 102(c) provides, in general, that gifts from employers to employees are taxable, and an employer's gifts to a employee can be considered tax free only if: (1) The gift constitutes an employee achievement award, as defined in section 74(c), or (2) the gift is considered a de minimis fringe pursuant to section 132(a). Sec. 102(c)(2). Neither of these exceptions applies in this case. Moreover, petitioner's reliance on Rev. Rul. 78-46, 1978-1 C.B. 22, is misplaced. Aside *492 from the fact that the ruling is not binding upon us, see Tandy Corp. v. Commissioner, 92 T.C. 1165, 1170 (1989) (citing Stark v. Commissioner, 86 T.C. 243, 250-251 (1986)); Haley Bros. Constr. v. Commissioner, 87 T.C. 498, 517 n.21 (1986); Crow v. Commissioner, 85 T.C. 376, 389 (1985), it simply does not apply to the instant situation. In Rev. Rul. 78-46, supra, the Commissioner ruled that the Government's discharge of surviving dependents of public safety officers from their liability to repay interim death benefits not exceeding $ 3,000 under the Public Safety Officers' Benefits Act of 1976 would not result in discharge of indebtedness income if the surviving dependents proved that repayment would cause an economic hardship, since the discharge was in the nature of a relief payment made for the promotion of the general welfare and therefore nontaxable. Unlike the facts in Rev. Rul. 78-46, supra, the facts in this case are that petitioner was receiving benefits while *493 still alive, the benefits were not interim death benefits, the benefits were not paid to petitioner's dependents, and the total amount in controversy is 17 times greater than the amount in controversy in the revenue ruling ($ 3,000). Accordingly, we view Rev. Rul. 78-46, supra, as inapposite to the circumstances of this case. Furthermore, petitioner mistakenly relies on Priv. Ltr. Rul. 88-39-026 (June 29, 1988) as precedent to support his position that the Veterans' Administration discharge is nontaxable. A private letter ruling has no precedential value. Sec. 6110(j)(3); see, e.g., Fowler v. Commissioner, 98 T.C. 503, 506 n.5 (1992); Estate of Jalkut v. Commissioner, 96 T.C. 675, 684 (1991). We recognize that the general rule of discharge of indebtedness income announced by the Supreme Court in United States v. Kirby Lumber Co., 284 U.S. 1 (1931), and reiterated by Congress in section 61(a)(12), possibly may lead to harsh results such as requiring the realization and recognition of income without the generation of cash proceeds from which *494 to pay tax. However, Congress did not create an exception to alleviate this possible hardship, and we must apply the law as it is established. We conclude that petitioners fall within the general rule requiring recognition of discharge of indebtedness income. We believe that the record clearly establishes that petitioner was indebted to the Veterans' Administration for the disability payments he received while he was on active duty with the Marine Corps, and that such indebtedness was discharged by the Veterans' Administration on January 9, 1989. We hold that the amount of $ 52,816.33 is includable in petitioners' gross income for the 1989 taxable year. Sec. 61(a)(12). For the foregoing reasons, Decision will be entered for respondent as to the deficiency and for petitioners as to the penalty under sec. 6662, I.R.C.
Footnotes
1. The Marine Corps category IV program is designed to supplement the active component of the Marine Corps with unique support and expertise that cannot be provided by officers on duty, U.S. Government employees, or civilian contractors. The Marine Corps determined that petitioner possessed this unique expertise due to his artistic ability and, therefore, he was placed in the Marine Corps category IV program.↩
2. Sec. 3104↩ of tit. 38 was renumbered sec. 5304 of tit. 38. Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. 102-40, sec. 402(b)(1), 105 Stat. 221, 238.
3. Sec. 102(a) provides: SEC. 102. (a) General Rule. -- Gross income does not include the value of property acquired by gift, bequest, devise or inheritance.↩